## WRIGHT v. FISCHER.—148 S. W. (2d) 49.

Middle Section. November 30, 1940.

Petition for Certiorari denied by Supreme Court, March 1, 1941.

J. D. Richardson, of Murfreesboro, for plaintiff in error Wright.
E. C. Holloway, Jr., of Murfreesboro, for defendant in error Fischer.

CROWNOVER, J.   The question presented by this appeal is whether a certain written contract is a release of a cause of action or a covenant not to sue.

The plaintiff, Dr. Fischer, was riding as a guest in an automobile owned and operated by J. F. Durham.   The automobile collided with an automobile owned and operated by Carson Wright; and Fischer, Durham, Wright, and a guest in Durham's car, Miss Bragg, were all injured.

Fischer instituted suit against Wright for damages for personal injuries, and Durham sued Wright.   The two cases were tried together in the Circuit Court, and resulted in judgment for $1,000 in favor of Fischer and judgment for $250 in favor of Durham.   Wright appealed

652

from the judgment in the Fischer case, but did not appeal in the Durham case. The appeal in the case of Fischer against Wright is the present case.

Wright had previously sued Durham. The insurance company with which Durham had a policy of liability insurance compromised the case with Wright by paying him $1,071.25. The company settled with Miss. Bragg, a guest in Durham's car, for $375, and paid Fischer $900 and Fischer executed, on December 22, 1939, an agreement not to sue Durham. This is one of the instruments involved in this cause, the defendant contending that it is a release, and the plaintiff insisting that it is a covenant not to sue.

On April 14, 1940, after Fischer's suit against Wright was instituted, Fischer and the insurance company executed a covenant not to sue and substituted it for the first instrument executed by them.

On the filing of the plaintiff Fischer's declaration against Wright, Wright filed three pleas: (1) Not guilty. (2 & 3) Accord and satisfaction: That the plaintiff's claim against him (Wright) was released by the plaintiff's executing a release to his joint tort-feasor, Durham, on December 22, 1939, which is as follows:

"For the sole consideration of Nine Hundred ($900.00) Dollars, the receipt and sufficiency, whereof is hereby acknowledged, the undersigned, Dr. Gordon R. Fischer, does hereby covenant and undertake with J. F. Durham, his heirs, assigns, administrators, agents and assigns, to forever refrain and desist from instituting or asserting against him any claim, demand, action or suit of whatsoever kind or nature either directly or indirectly for injuries or damages to person or property resulting or to result from an accident which occurred on or about the 27th day of October, 1939, at or near a point on the Murfreesboro to Lebanon Highway and about half a mile north of the corporate limits of the City of Murfreesboro and while the said Dr. Gordon R. Fischer was riding in an automobile belonging to and driven by J. D. Durham, which automobile collided with an automobile driven by Carson Wright.

"It is understood that the said Dr. Gordon R. Fischer expressly denies any negligence on his part causing or contributing to the said accident and any liability therefor, and that this agreement is entered into for the purpose of avoiding litigation and should not be considered as an admission of liability on his part, and the undersigned hereby expressly reserves the right to sue any other person or persons against whom he may have or assert any claim on account of damages arising out of the above described action.

"It is further expressly understood and agreed that as against the undersigned, his heirs, executors, administrators and assigns, but not against Carson Wright, this instrument may be pleaded as a defense in bar or abatement of any action of any kind whatsoever brought, instituted or taken by or on behalf of the undersigned on

account of said supposed claim or claims against said J. F. Durham.

"In witness whereof claimant has hereunto set his hand, on this, the 22nd day of December, 1939.

"(Signed)      Dr. Gordon R. Fischer

"Witness:   E. C. Holloway, Jr.

            R. T. Groom."

The plaintiff craved oyer of the said instrument, which motion was overruled, to which the plaintiff excepted.

Thereupon the plaintiff filed a demurrer on the ground that the defendant had failed to make profert of the said instrument, which was overruled, to which the plaintiff excepted.

But there was no appeal from these rulings of the court, hence we need not further consider them.

The plaintiff filed a replication to the plea of accord and satisfaction and denied that said instrument was a release, and averred that the instrument set out in the plea, if it is a release, was entered into by the mutual mistake of the parties (on Dec. 22, 1939); that it was their intention to execute a covenant not to sue; that after the execution of said instrument they entered into another agreement, on April 13, 1940, which stated the actual intention and real agreement between them, and which was substituted for the first agreement, after setting out the original agreement, is as follows:

"And, whereas, the above set out covenant not to sue might be construed by the Courts or other parties to be a release or settlement in full with J. F. Durham, his heirs, assigns, administrators and agents for injuries received by Dr. Gordon R. Fischer as set out in the above covenant not to sue, and

"Whereas, it was not the intention of Dr. Gordon R. Fischer to sign any release whatever to the said J. F. Durham, his heirs, assigns, administrators or agents, or to release the said J. F. Durham, his heirs, assigns, administrators or agents for damages sustained by him in an automobile accident which occurred on the Lebanon Pike on or about the 27th day of October 1939, and neither was it the intention of the said J. F. Durham, his heirs, assigns, administrators and agents to take a release from the said Dr. Gordon F. Fischer, neither was it the intention of the said J. F. Durham his heirs, assigns, administrators and agents to treat the above set out covenant not to sue as a release, but only as a covenant not to sue, and

"Whereas, any portion of the above set out covenant not to sue which might be construed as a release was so made by mistake as it was not the intention of either of the parties thereunto to give or take a release and settlement in full from the other party.

"Now, therefore, the said Dr. Gordon R. Fischer and J. F. Durham, do hereby declare the hereinbefore set out covenant not to sue to be null and void and of no further force or effect and do hereby cancel the same as fully as if the same had never been entered into

and enter into the following agreement in place and in stead of the covenant not to sue as hereinbefore set out.

"For the sole consideration of, Nine Hundred and no/100 ($900.00) Dollars, the receipt and sufficiency of which is hereby acknowledged, but not in satisfaction of his damages, the undersigned, Dr. Gordon R. Fischer does hereby covenant and undertake with the said J. F. Durham his heirs, assigns, administrators and agents to forever refrain and desist from instituting or asserting against him any claim, demand, action or suit of whatever kind or nature either directly or indirectly for injuries or damage to person or property resulting or to result from an accident which occured on or about the 27th day of October, 1939, at or near a point on the Murfreesboro to Lebanon Highway and about a half mile north of the corporate limits of the City of Murfreesboro and while the said Dr. Gordon R. Fischer was riding in an automobile belonging to and driven by J. F. Durham, which automobile collided with an automobile driven by Carson Wright.

"It is expressly understood that the said Dr. Gordon R. Fischer expressly denies any negligence on his part causing or contributing to the said accident and any liability therefor, and that this agreement should not be construed as an admission or liability on his part, nor an admission of liability on the part of the said J. F. Durham and the undersigned Dr. Gordon R. Fischer expressly reserves the right to sue the said Carson Wright, the real person liable in said accident for damages resulting to him and arising out of the above described accident.

"It is further expressly understood and agreed that as against the undersigned, J. F. Durham, his heirs, assigns, administrators and guests, this instrument is to be treated as a covenant not to sue and may be plead in set off or recoupment, but not pleaded as a defense in bar or abatement.

"It is further expressly understood and agreed that this agreement is not in any wise to enure to the benefit of Carson Wright and that this instrument is merely a covenant not to sue said J. F. Durham, his heirs, assigns, administrators and agents and is not a release of the said Dr. Gordon R. Fischer's damages or right of action against the parties legally liable especially Carson Wright, the real party liable.

"In Witness Whereof we have hereunto executed this instrument on this 13th day of April, 1940.

"Dr. Gordon R. Fischer
"J. F. Durham
"Standard Surety & Casualty Company
"By R. T. Groom, Agt.

"Sworn to and subscribed before me this April 13th, 1940
"Mamie Maddux
"Notary Public
"My Com. Exp. Jan. 6, 1941
"Witness: E. C. Holloway, Jr.
                    Mamie Maddux .
    "I, J. F. Durham do hereby make oath that I have not transferred or assigned 'The covenant not to sue' set out on pages one and two of the foregoing agreement.
    "This April 13th, 1940
                                                    "J. F. Durham
"Sworn to and subscribed before me, this 13th day of April 1940
"Mamie Maddux
"Notary Public          My Commission expires January 6th, 1941.
    "The Standard Surety & Casualty Company of New York, hereby approves the substitution of the covenant not to sue set out on pages three and four of the foregoing instrument for the covenant not to sue set on pages one and two of the foregoing instrument and consent to all the terms and conditions set out in the foregoing instrument.
                    "This April 26th, 1940
                    "Standard Surety & Casualty Company
                    "By R. T. Groom, Agt."
    The defendant Wright filed a rejoinder renewing his plea of accord and satisfaction, and averring that the last instrument was also a release.
    The cases were tried by the judge and a jury. At the conclusion of all the evidence the defendant Wright moved the court to strike the replication to pleas Nos. 2 and 3 and to peremptorily instruct the jury in his favor.
    The court held that the parties intended to execute a covenant not to sue and not a release, and submitted the case to the jury on the question of liability for damages, to which the defendant excepted.
    The jury returned a verdict of $1,000 in favor of Fischer and a verdict of $250 in favor of Durham.
    The defendant filed a motion for a new trial as to Fischer's suit, which was overruled by the court.
    The defendant Wright appealed in error to this court and has assigned errors which raise only one proposition: that the court erred in refusing to sustain the plea of accord and satisfaction, and in failing to hold that the plaintiff Fischer had executed a release to Durham, Wright's joint tort-feasor, which operated to extinguish any action against Wright, and in failing to peremptorily instruct the jury for the defendant Wright.
    The facts necessary to be stated are as follows: J. F. Durham was driving his automobile from Lebanon to Murfreesboro at about 1

o'clock at night, on October 27 or 28, 1939, returning from a dance at the Cumberland University. He was accompanied by Dr. Fischer and Miss Bragg.

When he was about a mile from the city limits of Murfreesboro his automobile collided with an automobile owned and driven by Carson Wright which was traveling in the opposite direction, and the occupants of both automobiles were injured.

The testimony for the plaintiff Fischer was that Durham was traveling on his right side of the highway at the rate of about 35 miles an hour; that as he came around a curve and was about 100 yards from a hill top, he saw the lights of Wright's automobile as it came over the hill top; that Wright's lights went out and he came on down the center of the highway and crashed into Durham's automobile; that Wright's lights came on again just before the crash.

The testimony for the defendant Wright was that he was travelir · at the rate of 40 miles an hour; that as he came over the hill  e saw Durham's car coming around the curve at a rapid rate of speed; that he checked his speed and pulled his car over to the r ght side of the road as far as he could go; that apparently Durham was unable to straighten his car up after he came around the curve and it crashed into his car; that his own lights did not go out.

The jury found that the collision was caused by the negligence of Wright, but the defendant did not assign error as to the jury's verdict, therefore·this court will not consider the manner in which the accident occurred or the amount of the verdict.

Wright instituted suit against Durham. Mr. Groom, agent of the insurance company with which Durham had a liability policy, settled with Wright by paying him $1,071.25, and Wright signed a release, and the suit was withdrawn.

Groom, agent, made a settlement with Fischer by paying him $900 and Fischer executed the instrument (dated Dec. 22, 1939) involved in this suit agreeing not to sue Durham. Groom testified that three papers were executed; that he was not a lawyer; that he drew up the first paper, considering it a covenant not to sue; that Fischer took it to his lawyer, who drew up another, which was substituted for the first with the insurance company; that the lawyers later presented a third covenant not to sue, which was substituted for the second instrument; that there was never any intention to release Wright; that the intention was to execute a covenant that Fischer should not sue Durham. He further testified that Durham contended that the collision was not the result of his negligence, but the insurance company wanted to settle with the parties rather than have several lawsuits, and these settlements were made by him (Groom).

Fischer testified that he agreed with Groom to accept $900 and execute a covenant not to sue Durham; that he signed an instru-

ment which he understands was a release; that the insurance company gave him a check for $900 on which was written "Full release of Fred Durham"; that he consulted a lawyer before indorsing the check, and on the lawyer's advice required Groom to cross out the words "Full release" and write on the check "covenant not to sue," after which he cashed the check; that it was not the intention to execute a release.

Durham testified that the collision was not caused by his negligence and he did not authorize Groom or the insurance company to pay anything to Wright.

The propositions presented by this appeal are (1) whether the last instrument could be substituted for the first, and (2) whether the last instrument is a covenant not to sue or a release.

We will discuss the last proposition first, for if the last instrument is not a covenant not to sue then there is no need to consider the substitution.

We think the last instrument, dated April 13, 1940, is a covenant not to sue.

1. In this contract Fischer agrees to refrain from instituting any suit against Durham as the result of this collision, and expressly reserves the right to sue Carson Wright. It is further provided: "This instrument is to be treated as a covenant not to sue and may be plead in set-off or recoupment, but not pleaded as a defense in bar or abatement. . . . This instrument is merely a covenant not to sue said J. F. Durham, his heirs, etc., and is not a release of the said Dr. Gordon R. Fischer's damages or right of action against the parties legally liable, especially Carson Wright, the real party liable." It is, therefore, a covenant not to sue, and not a release. Smith v. Amusement Co., 128 Tenn., 112, 157 S. W., 900; Nashville Interurban Ry. Co. v. Gregory, 137 Tenn., 422, 193 S. W., 1053; Oliver v. Williams, 19 Tenn. App., 54, 83 S. W. (2d) 271.

2. Fischer and the insurance company, who were the parties to the first contract, on becoming doubtful whether the instrument expressed their intention, agreed to and did execute another instrument which stated their real intention, and substituted it for the first. This evidence is uncontroverted.

The general rule is that the release of one of two or more joint tort-feasors releases all (if joint liability is established). The rule is based upon the theory that, when one has received full compensation for a wrong, no matter from which wrongdoer or from what source, the law will not permit him to recover further damages. Brown v. Kencheloe, 3 Cold., 192, 200; Smith v. Amusement Co., 128 Tenn., 112, 116, 157 S. W., 900; Nashville Interurban Railway Co. v. Gregory, 137 Tenn., 422, 193 S. W., 1053; Byrd v. Crowder, 166 Tenn., 215, 60 S. W. (2d), 171; Oliver v. Williams, 19 Tenn. App., 54, 83 S. W. (2d), 271.

658

And it was held in Byrd v. Crowder, 166 Tenn., 215, 60 S. W. (2d), 171, that the effect of the inclusion in a covenant not to sue, of a stipulation that it might be pleaded in bar to any action against the covenantee was to distinguish any such cause of action against the covenantee, and that the instrument was in effect a release, which operated in favor of a joint tortfeasor; hence, it is insisted that the first instrument hereinabove copied is a release, and upon its execution the rights of the parties immediately attached, resulting in releasing Wright.

■■ Ordinarily, the parties to a contract of any kind may at any time rescind it by their mutual consent and agreement (2 Black on Rescission and Cancellation (1st Ed.), 1231, sec. 521), or change or modify the terms of their contract without rescinding it entirely, if the rights of third parties have not intervened. And if the parties agree not merely to rescind the existing contract, but make a new contract with reference to the same subject-matter, the new contract taking the place of the old, the substitution of the one for the other is a sufficient consideration to support the new agreement. 2 Black on Rescission and Cancellation (1st Ed.), 1235, sec. 523.

■ It was clearly the intention of Groom and Fischer to execute a covenant not to sue when the first instrument was executed, and they had a right to reform the instrument or substitute another for it when they discovered that the language they had used had been construed to be a release, so as to make the written contract conform to the real intention. 2 Black on Rescission and Cancellation (1st Ed.), sec. 521.

Under these circumstances, the parties would have had a right to have gone into the Chancery Court and have had the contract reformed on the ground of mutual mistake. 2 Restatement of the Law of Contracts, 968-972, sec. 504; 13 C. J., 611, sec. 656; 17 C. J. S., Contracts, sec. 418; Alexander v. Shapard, 146 Tenn., 90, 24 S. W., 287; 33 C. J., 922, sec. 25, Note 9; 53 C. J., 1211.

■ "A release obtained as the result of a basic mistake, or of fraud or duress may be rescinded and after such rescission the claim against all the tort-feasors revives." 4 Restatement of the Law of Torts, 462, 463, sec. 885d.

It is insisted by Wright that there is no defect in the instrument itself; that it contains precisely what it was intended to contain, and is the instrument which was chosen by the parties deliberately, on the advice of counsel, and intended to be the consummation of their agreement; that in such case the written agreement cannot be varied by parol testimony. If such were the state of the case, this would be true. Hunt v. Housmanier's Administrators, 8 Wheat., 174, 5 L. Ed., 589; Hunt v. Rhodes, 1 Pet., 1, 7 L. Ed., 27. But in the instant case the parties had a definite agreement, and attempted to enter into a covenant not to sue. The attorney wrote up such

an agreement for them but added words which had a different meaning and did not express what they intended. In such circumstances the Chancery Court would grant relief. Trigg v. Read, 5 Humph., 529, 42 Am. Dec., 447.

The contention that if the first instrument was made null and void and cancelled as fully as if it had never existed then the payment of the $900 operated as a release of all the parties, especially Wright, is not well made for the reason that the money was paid as a result of an oral agreement not to sue. There is no doubt that all the parties intended to and did enter into an oral agreement or covenant not to sue, without ever intending to release any of the parties. There is no law in Tennessee requiring a covenant not to sue to be in writing; but be that as it may, the parties did enter into another agreement that expressed the real original intention of the parties, which operated as a reformation of the original agreement.

It is also contended that just as soon as the original agreement or release was signed by the parties the joint tort-feasor's right attached, which operated to immediately release Wright, and that the original agreement could not be reformed or amended by another agreement entered into without the consent of Wright. We think this contention is not sound for the reason that the first written agreement or release was not the real agreement between the parties, and the parties could have gone into a court of equity to set up the real agreement and for a reformation over the objection of Wright. If they had a right to resort to a court of equity for reformation they certainly had a right to amend it themselves so as to make it speak the real intention of the parties.

It results that we hold that the trial judge was correct in holding that the real intention of the parties was to execute a covenant not to sue, and that they had a right to correct the mistake by executing the last instrument, as the evidence on the question is not controverted; hence, all the assignments of errors are overruled and the judgment of the lower court is affirmed. This is not a suit for reformation and rescission, as the parties had already reformed the contract themselves. A judgment will be entered in this court in favor of Fischer and against Wright for $1,000 which interest from June 8, 1940 to the present, together with the costs of the cause. The costs of the appeal are adjudged against Wright and the surety on his appeal bond.

Faw, P. J., and Felts, J., concur.