# J. H. McCALL and KURT HENZE v. THEODORE OLDENBURG, FRANK H. SHOMAKER, and DERRICK B. DEAKINS.—382 S.W.(2d) 537.

Eastern Section. March 26, 1964.

Certiorari Denied by Supreme Court August 31, 1964.

Chambliss, Chambliss & Hodge, Chattanooga, for appellant.

Folts, Bishop, Thomas, Leitner & Mann, Chattanooga, for appellee.

PER CURIAM.

This action, as amended, was brought by complainants J. H. McCall and Kurt Henze seeking (1) damages from the defendants for breach of their employment contracts with complainants, and (2) seeking a declaration by the Chancellor that the defendants, by terminating their relationship with complainants without giving a month's notice, had forfeited their claim to sales commissions earned but not received by complainants at the time defendants terminated their employment. Defendants, denying any breach of contract by them, sought to recover the sales commissions in question.

The Chancellor, after trying the cause on oral testimony, found that the parties had no "definite understanding relating to termination of their working agreements," and that they were terminable at will. The Chancellor further found that the defendants were en-

titled to recover commissions on all sales made or orders taken by the complainants (Hardgoods Division) prior to May 13, 1963, the date the defendants terminated their relationship with complainants. Complainants appealed.

The complainants J. H. McCall and Kurt Henze are manufacturers representatives, associated under the name of J. H. McCall Company. Prior to 1957, their representation was confined to principals in the packaging of "soft goods" business.

About the 1st of January, 1957, the defendant, Ted Oldenburg, approached the complainants and sought an association with the J. H. McCall Company to install a "hardgoods" or metal division. Oldenburg, without compensation, made a survey of the area's prospects, which he presented to complainants. The parties then entered into an agreement, entirely oral, whereby Oldenburg would associate with complainants and develop a hardgoods business.

Under the original agreement, Oldenburg was to receive $350.00 per month, plus one-half of the commissions received from the sales of the "hardgoods" division. Oldenburg was to pay all his traveling expenses, and complainants were to pay the office expense. The parties had no specific understanding as to the term of their relationship, nor the method of termination. Complainants retained no control over Oldenburg's methods of operating, his time schedule, route, travel, customers solicited or any of the details over which principals or employers normally exercise supervision, but left the development of the "hardgoods" business in the hands of Oldenburg, and directed their efforts, in the main, to servicing their "softgoods" accounts.

Oldenburg quickly developed a substantial hardgoods business, and the parties made several adjustments in the percentages of commissions and in the monthly payments to Oldenburg. In June, 1959, Oldenburg's monthly retainer was reduced to $100.00, and his share of commissions was increased to 60% on the first two thousand dollars of monthly sales commissions, and 70% of commissions over two thousand dollars.

The hardgoods division continued to grow, and it became necessary to give Oldenburg some assistance. In 1962, complainants and Oldenburg agreed to associate the defendant Shomaker. After Shomaker's association, complainants continued to receive the same percentage of sales commissions earned by the hardgoods divisions. Oldenburg was limited to the first two thousand dollars of the remaining commissions, with all over two thousand dollars a month going to Shomaker. Shomaker was also to be paid a monthly retainer of $500.00, which was to be decreased as sales commissions increased. Shomaker's monthly retainer was to be paid one-half by Oldenburg, and one-half by complainants. Oldenburg and Shomaker were to pay their own travel expenses, the complainants were to pay the office expense, and the extraordinary expenses, such as trips to the principals' home offices or unusual entertainment costs, were to be paid one-half by complainants and one-half by defendants.

In September, 1962, the defendant Derrick B. Deakins became associated with the hardgoods division, and was paid a monthly retainer of $400.00, one-half of which was paid by complainants, one-fourth by Oldenburg, and one-fourth by Shomaker.

In April and early May, 1963, Oldenburg spoke to McCall concerning a re-evaluation of the percentages of commissions being received by the parties, and protested having to pay one-half of the monthly retainer received by Shomaker pointing out that the arrangement in effect placed a ceiling on his earnings, and that the commissions were rapidly approaching the point where Shomaker's income would exceed his. No action was taken by complainants and, on May 13, 1963, Oldenburg and Shomaker presented a suggested revision of percentage payments to complainants. The parties discussed the issue at length, but were unable to agree, complainants stating that they desired additional time to think it over. Oldenburg requested an answer by 4:00 P.M., and, when it was not forthcoming, both Oldenburg and Shomaker notified McCall that they were "dis-associating" from J. H. McCall and Company "effective at the close of business today, May 13, 1963."

Several hours later, Deakins notified the complainants by telegram that he was also "dis-associating" from the J. H. McCall Company.

Both complainants and the defendants notified the principals in the hardgoods line of the termination of their relationship. The defendants continued to serve the accounts of those principals who requested that they do so for a 30 days period. The commissions on sales made after May 13, 1963 were paid to complainants, and the Chancellor held that defendants were not entitled to share therein.

Complainants paid defendants their portion of all commissions earned and received by the hardgoods division prior to May 13, 1963, but refused to pay any portion of

the several thousand dollars in commissions earned prior to May 13, 1963, but which were not received by the complainants until the associations between the parties had been terminated. These latter commissions are the ones to which the Chancellor held the defendants were entitled.

Based on the above evidence, the Chancellor found that the relationship between the parties "pertains to principal and agent, and also is in the nature of employer and employee." The Chancellor further found that there wasn't "any limitation whatsoever on the period of continuation of this relationship on the part of the defendants with the McCall Company, nor on the other hand [was] there any agreement on the part of McCall Company to continue for any definite period of time * * * McCall Company could have terminated the relationship with the defendants any day that it desired, or with any one of them, * * * and if one has the right to terminate the employment without notice, the other can do likewise."

■ The general rule in the United States is that an indefinite hiring is a hiring at the will of both parties, and may be terminated by either at any time. Savage v. Spur Distributing Co., 33 Tenn.App. 27, 228 S.W.(2d) 122; Combs v. Standard Oil Co., 166 Tenn. 88, 93, 59 S.W.(2d) 525; 35 A.L.R. 1432; 135 A.L.R. 646; 161 A.L.R. 706.

While conceding this, the complainants point to the monthly retainer paid the defendants and insist that it clearly shows that the employment or agency of the defendants was for a definite period, and could not be terminated at will.

In Savage v. Spur Distributing Company, supra, it was pointed out at page 125 of 228 S.W.(2d) that "[t]here is a conflict of authority as to the effect of a provision for periodic compensation to an employee. Where the contract provides that the employee shall be paid so much per week, month, or year, with nothing else to fix the time of hiring, some cases hold it to be a contract for a week, a month, or a year. But other cases treat such a unit of time merely as measuring the compensation and not the duration of the employment, and hold it to be an indefinite hiring which may be terminated at the will of either party. American National Ins. Co. v. Jackson, supra, 12 Tenn.App. 305, 308; Godson v. MacFadden, 162 Tenn. 528, 530, 39 S.W.(2d) 287; Annotations, 11 A.L.R. 469, 100 A.L.R. 834, 161 A.L.R. 717, 35 Am.Jur., Master and Servant, Sec. 20, pp. 458-9."

■ But whichever theory is adopted, the courts generally agree that the intention of the parties as ascertained by the terms of the contract read in the light of surrounding circumstances will control. 35 Am.Jur., Master and Servant, Sec. 20, p. 459; 11 A.L.R. 480, 100 A.L.R. 841.

In the recent case of Delzell v. Pope, 200 Tenn. 641, 294 S.W.(2d) 690, wherein the Court allowed recovery for breach of an employment contract resting "solely upon an implied understanding based upon a course of conduct between the complainant and the Board," our Supreme Court apparently aligned itself with those courts that recognize "a hiring at so much per week, or month, or year is a hiring for that period, provided there are no circumstances to the contrary," 294 S.W.(2d) at page 694. In doing so, however, the Court emphasized that the time of payment, of itself, is not conclusive that

the parties have agreed that the employment or agency is to continue for the pay period, but is a material circumstance to be considered, in connection with other relevant facts.

In the present case, we have endeavored to place the monthly retainers in their proper perspective, and are convinced that they are not intended to define the period of time the parties agreed to be associated, and, further, that they were not intended by the parties as monthly compensation for services rendered by the defendants. We think the monthly retainer was merely a method seized upon by the parties to subsidize new associates by sharing their heavy travel expenses until the associates' efforts became productive, and a method to equalize the payments to complainants and the defendants.

Our conclusion is supported, we think, by the fact (1) that the monthly retainer was less than the actual travel expenses testified to by Oldenburg and Shomaker and were reduced when the defendants' efforts became productive; (2) that after the reduction, the amount of the retainer, when related to the amount of compensation received by the defendants, was insignificant, and, more important, (3) *all parties*—not just the complainants— were called upon to bear a proportionate part of the expense of the monthly retainers paid to each new associate. For example, during 1962 and the first 4 months of 1963, the payment of retainers by Oldenburg to his associates exceeded his retainer by more than $2000.00.

Then, too, the complainant J. H. McCall testified that:

"This monthly retainer was originally designed for two purposes, as a subsidy and as a guarantee and continuing payment to insure and assure the loyalty

and the complete devotion of business efforts to the Hardgoods Division of McCall Company."

■ After considering all the evidence, and giving due emphasis to the monthly retainer, we have concluded that the evidence does not preponderate against the Chancellor's finding that the defendants' employment or agency was of an indefinite duration, and could be terminated at the will of either party.

Complainants next insist that the Chancellor erred in awarding the defendants a recovery of their share of the commissions earned before the termination of the relationship between the parties, but which were not received by complainants until after the termination date. The position of the complainants on this issue is two-pronged. First, complainants insist that the defendants, by agreeing among themselves to leave the company's employ and to form their own company, forfeited to complainants all sums due for services rendered, citing T.C.A. sec. 50-201. Second, complainants insist that the defendants' recovery of the commissions was barred by the doctrine of unclean hands. We find no merit in either insistence.

■ The forfeiture provision of T.C.A. sec. 50-201 is applicable only to those situations where an employee leaves his employ "without good and sufficient cause, before the expiration of the time for which he was employed." In the present case, the defendants did not leave their employment before the expiration of the time for which they were employed. As heretofore stated, the employment or agency of the defendants was of an indefinite duration, and was terminable at any time by either of the parties. See Associated Dairies v. Ray Moss Farms, 205 Tenn. 268, 326 S.W.(2d) 458.

■ As to the insistence that defendants' recovery was barred by the doctrine of unclean hands, the decisive answer is that the evidence fails to show that the defendants were guilty of conduct which would justify the application of the doctrine. See Gibson's Suits in Chancery, 5th Ed., Sec. 51, p. 63. Then too, the maxim is a weapon of defense, and "operates only against one who seeks the active interposition of the court, and should not be applied to defendant not voluntarily seeking relief in equity and merely brought there at the suit of another." 30 C.J.S. Equity sec. 96, p. 485, and sec. 98, p. 489.

For the reasons above stated, we have concluded that the Chancellor's decree in this cause is without error, and it is, therefore, affirmed in all respects. This cause is remanded for the accounting as to all commissions earned by the Hardgoods Division prior to the termination date of May 13, 1963, as ordered by the Chancellor. Costs incident to the appeal are adjudged against the complainants, and their sureties.