THOMAS L. GARRISON v. LANNOM MANUFAC-
TURING COMPANY, INC.—402 S.W.(2d) 462.

Middle Section at Nashville.  October 29, 1965.

Certiorari Denied by Supreme Court April 4, 1966.

Wyatt & Hickerson, Tullahoma, for appellant.

Haynes, Wiseman & Hull, Tullahoma, for appellee.

## I

## THE CASE

SHRIVER, J.   This is a suit to recover commissions or a bonus alleged by complainant to be owing by defendant under an oral contract of employment.

The case was tried before Chancellor Robert L. Keele on oral testimony and resulted in the dismissal of com-

plainant's action. From this decree, complainant appealed and has assigned errors.

## II

## THE PLEADINGS

The original bill alleges that complainant had been employed by Craig Gloves, Inc., a subsidiary of defendant, since December 1960; and that, on or about August 18, 1963, Mr. Charles E. Parish, president of both corporations, approached complainant with reference to employment by the defendant and this resulted in an oral contract by which defendant left the employ of Craig Gloves, Inc., and began working as salesman of baseballs and softballs for the defendant corporation.

It is alleged that the agreement was that complainant would be paid $300.00 per month, plus certain travel expenses and, in addition thereto, would receive a five per cent (5%) commission on gross sales made by him over $60,000.00, except as to sales made at cut prices (having reference chiefly to Youth League balls), on which the commission would be three per cent (3%). In addition to the above, there was an allowance for advertising.

It is alleged that the traveling season began in July, but was completed before the beginning of the baseball season for the following year, and that complainant, along with other salesmen of the company similarly employed, engaged in no traveling for the company or selling from the first of April until the beginning of the following season after the first of July.

It is further alleged that in the Spring of 1964, complainant was offered a position with General Shoe

Corporation, and on or about April 22nd or 23rd 1964, he informed defendant's president, Mr. Charles E. Parish, of his intention to accept this position, but stated that he was willing to stay with defendant as long as he was needed during the remainder of the season. Mr. Parish then requested him to return to the plant during the first week of June for the purpose of training a salesman to take his place and complainant did so return in June.

Complainant was paid his salary as agreed and his other expenses, but defendant refused to pay the commission or bonus on his sales in excess of $60,000.00. It is alleged that he had sales to his credit of between $152,000.00 and $153,000.00.

The bill prays for process and an answer, the oath thereto being waived, and that the Court determine the terms of the contract entered into between the parties and decree complainant the amount of commissions due him.

The answer, which is sworn to by counsel for the defendant, admits that a verbal contract of employment was entered into with complainant; that a salary of $300.00 a month with an expense allowance was a part of the agreement; but the answer denies that there was any contract to pay the commission to complainant as alleged. The answer asserts: ''Defendant admits that it was a policy of the company to pay a bonus to its salesmen if a full year of work had been completed satisfactorily and if the profits of the company justified such a bonus. Such bonus was customarily based upon 5% of sales in excess of $60,000.00 less a penalty of 2% for any sales made at cut prices.'' The answer admits the allegations with respect to the allowance for advertising and avers that the contract of employment with complainant was for a full year running from July 1, 1963 to June 30,

1964, and that complainant left the employ of defendant in April 1964, thereby, breaching his contract of employment.

The answer also denies that it was agreeable to defendant for complainant to resign and sets forth certain figures representing the alleged aggregate sales of the complainant which admittedly were well over $60,000.00,

## III

## ASSIGNMENTS OF ERROR

There are 13 assignments of error which it will not be necessary to set out seriatim. The assignments challenge the findings and conclusions of the Chancellor on the grounds (a) that the evidence preponderates against the judgment of the Court and that there is no evidence to support same; (b) that it was error for the Chancellor to find that the commission or bonus sued for was a gratuity so that defendant had the discretion to pay or not to pay it; (c) that the contract was an annual one rather than one of indefinite duration; and (d) that it was error to hold that Section 50-201, T.C.A., is applicable, which section, among other things, provides that "[A]ny person so under contract or employ of another, leaving his employment without good and sufficient cause, before the expiration of the time for which he was employed, shall forfeit to the employer all sums due for service already rendered."

## IV

## CONCLUSIONS OF LAW AND FACT

The Chancellor filed a memorandum opinion in the cause, setting forth the pleadings and the contentions of the parties and discussed at some length the distinction

between a "commission" and a "bonus", citing several authorities wherein the words "commission" and "bonus" are defined; and, while he stated that the designation of the term might not be of utmost importance, he, nevertheless, reached the conclusion that the commission claimed by the complainant was in fact a bonus or gratuity which might be paid or withheld in the discretion of the employer.

With this conclusion, we cannot agree. It might be pointed out that the complainant testified positively that no specified period of time was discussed or agreed on as to the duration of his employment by defendant and that, although Mr. Parish, the President of defendant, may have referred to the commissions which were to be paid on sales over $60,000.00 as a "bonus", complainant understood this to be an essential and definite part of his employment agreement and asserted that he would never have left his former job to take the position as salesman for defendant in the absence of the agreement to pay this commission or bonus.

Complainant called as a witness Mr. Clyde Weiderman, a salesman for defendant company engaged in work identical to that performed by the complainant, that is, selling baseballs and softballs to various customers of defendant. The witness testified without objection that he had worked for the defendant company for 26 years and described his employment agreement as being virtually identical with that of complainant. He stated that, in addition to his salary, he received a bonus each year based on five per cent (5%) of sales above the quota and three per cent (3%) on another type of account, but testified that this bonus had never been contingent on profits earned by the defendant company. His contract was a

verbal one and there was no understanding as to the length of time that he was employed.

He also described the selling season as beginning on the first Monday after the fourth of July and extending through December, with only pick-up or clean-up jobs after December. He said that the traveling time was about 26 weeks a year and that he never went out on the road from the first of April to the beginning of the following season about the first of July. Speaking of the so-called bonus, he was asked and answered (Tr. p. 42):

"Q. And was it treated as compensation with you, and have you always treated it that way?

A. I have always figured it part of my compensation, yes, sir."

Mr. R. D. Clay was called to testify for the complainant and stated that he was also a salesman for the defendant company and described his position with the company in substantially the same terms and in the same way as complainant and Mr. Weiderman did. He had worked for defendant since January 1961, and described his bonus of five per cent (5%) on sales over his quota of $60,000.00. He was asked about the traveling season for the sale of baseballs and described it as being about 26 weeks out of the year and stated that he did not go out on the road from the first of April until the beginning of the following season. He was asked if he would have agreed to work for the defendant without the commission on sales above his quota, and he answered: "My wife wouldn't let me—no." He also stated that there had never been any mention by the defendant as to the bonus being based on the profits of the company, and that it was his understanding that he could be fired or released by the defendant at any time

and that he could quit any time he desired. His contract was also an oral one.

The defendant's first witness was Mr. Charles E. Parish, the President. He testified that the complainant had worked for the Craig Glove Company under a contract that the witness called "The standard contract, annual salary, with quota and bonus arrangement, expense account, etc." He stated that complainant transferred over to Lannom Manufacturing Company in August 1963, and insisted that, while the contract with complainant was on oral one, it was understood that complainant was taking over the contract and agreement of a former salesman, Frank Gross, which provided for an annual salary of $3,600.00, a certain quota which was later described as being $60,000.00, with bonus, etc. He also insisted that, under the Gross contract, they contemplated a sales year which was from July 1st to June 30th of the following year.

It might be stated at this point that there is very little conflict in the evidence offered by complainant and defendant at any point. The only point of conflict which we deem significant is where complainant stated that when he told Mr. Parish he was going to resign and take a job with General Shoe, it was agreeable to Mr. Parish who then asked him to return for a week the first part of June to break in a new man. On the other hand, Mr. Parish insisted that complainant's resignation was in no sense agreeable and that he did not offer to stay with defendant company for such time during the remainder of the '63-'64 season as they needed him, but that complainant insisted on leaving very soon after his resignation.

As to the fact that nothing definite was said about the term of the contract being from year to year or that the

annual term ran from July 1st through June 30th the following year, there was no substantial dispute. That is to say, the defendant's evidence does not show that these matters were actually discussed and mutually understood and agreed on.

The clear preponderance of the evidence is that, from April 1st to June 30th, the salesmen were not expected to be on the road nor to engage in any substantial amount of work for the company except to write some letters, answer some correspondence and, perhaps occasionally, call on a customer who made inquiry about some matter.

From all of this, it would appear that, in reality, the defendant reaped an advantage from the resignation of complainant the first of April rather than for him to have remained on the payroll at $300.00 a month plus commissions on such orders as were sent in from customers from then until June 30th. Furthermore, the Company had an opportunity to hire a replacement before the actual season began the first of July without having to be in a hurry about it.

Finally, it should be noted that Mr. Parish testified, in effect, that he had the authority and power under the contract of hire to fire complainant at any time.

■■ The Court is impressed that the real issue in this case is whether or not the payment of the so-called bonus on sales above the quota of $60,000.00 was an integral, necessary part of the salesman's remuneration under his contract of hire.

From all the evidence introduced herein, we are convinced that it was a fundamental part of the agreement as understood by both complainant and defendant, and that the fact of complainant's leaving defendant's employ

in April after the selling season was over should not be held to be determinative of this case.

From all the evidence, we think it was error for the Chancellor to hold that this so-called commission or bonus was a gratuity which the defendant, through its president, could pay or withhold at its discretion.

██ We also think that it was error for the Chancellor to hold that Section 50-201, T.C.A., is applicable so as to deprive the complainant of his right to the commissions or bonus involved here. This is true because, in the first place, defendant did not plead the statute which, in this instance, represents an affirmative defense. No mention of it was made in the answer, which, in general terms, alleges a breach by complainant of an annual contract of hire. This being a penalty statute should be applied by a court of equity only in the event its application is shown by clear and convincing proof of facts that bring the case within its purview, and it should not be applied in the absence of a special plea invoking it.

The Chancellor asserted that, since it was testified by the complainant himself that there was no agreement between him and Mr. Parish as to the time of the contract, the Court would have to presume that said contract was for a yearly period beginning in August of 1963 and ending in August of 1964.

Attention is called to the holding in American Nat. Insurance Co. v. Jackson, 12 Tenn.App. 305, where, quoting with approval from 39 C.J., 44-45, sec. 18, the Court said:

██ "In the United States, a general or indefinite hiring is presumed to be a hiring at will. In the absence of custom, or of facts and circumstances showing a

contrary intention on the part of the parties, it is generally held that the fact that a hiring is at so much per day, week, month, quarter, or year, raises no presumption that the hiring was for such a period, but only at the rate fixed for whatever time the party may serve."

In 56 C.J.S. Master and Servant, sec. 8, p. 76, it is said:

"On the other hand, it has been stated that the 'American view' tends toward a holding that the hiring is at will, unless the contrary be fairly plain, and in the United States a general or indefinite hiring, or a hiring under a contract which does not specify a definite time or prescribe conditions which determine the duration of the relation, ordinarily is regarded as, or is presumed to be, a hiring at will."

In 18 R.C.L., 509, "Master and Servant," it is said:

"Perhaps the drift of modern judicial thought is in the direction of holding that in case of a hiring at so much per week, month or year, no presumption attaches that the hiring is for a day even, but that it is only a hiring at a fixed rate for whatever time the party may serve, so that the contract of employment may be ended at any time by either party without notice where there is no settled usage or custom to the contrary."

In McCall v. Oldenburg, 53 Tenn.App. 300, 382 S.W. (2d) 537, among other things, it was said:

"The general rule in the United States is that an indefinite hiring is a hiring at the will of both parties, and may be terminated by either at any time. Savage v. Spur Distributing Co., 33 Tenn.App. 27, 228 S.W.(2d) 122; Combs v. Standard Oil Co., 166 Tenn. 88, 93, 59

S.W.(2d) 525; 35 A.L.R. 1432; 135 A.L.R. 646; 161 A.L.R. 706.''

On the whole, we feel that the Complainant earned his bonus or commission under the terms of the contract of hiring as understood by him and the defendant at the time of his hiring and that he is entitled to recover. There is some discrepancy as to the amount, but we think the testimony of Mr. John Ransom, who was in charge of the records of the defendant company, gave the more accurate and reliable figures and, according to him, the amount of the commission or bonus due the complainant on sales made by him prior to the time of his resignation was $2,641.79, and we, therefore, render judgment for that amount.

The costs are taxed to defendant.