Paul F. BONASTIA, Plaintiff,

v.

BERMAN BROS., INC., Defendant.

No. 94–2671–TUBRE.

United States District Court,
W.D. Tennessee,
Western Division.

Dec. 21, 1995.

Max Ostrow, Memphis, TN, for plaintiff.

Herbert E. Gerson, Memphis, TN, for defendant.

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

TURNER, District Judge.

Plaintiff Paul F. Bonastia ("Bonastia") brought this action claiming defendant Berman Bros., Inc. ("Berman Bros.") breached his alleged two-year employment contract when it terminated him on June 27, 1994. Presently before the court is defendant's motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure.

### I. *FACTS*

The facts relevant to this motion are largely undisputed. Berman Bros. is an Illinois corporation that maintains an office in Memphis, Tennessee. According to an October 5, 1992 letter from Jean E. Vespermann, Director of Operations for Berman Bros., plaintiff, a Tennessee resident, had previously met with Berman Bros. representatives to discuss possible employment with defendant as an account manager.

The letter provides, in relevant part:

Thank you for spending time with Dan, Abner and me in discussing your interest in joining Berman Bros. and listening to our business direction in the area of new territories and sales growth. I am pleased that you will be joining us as an Account Manager, effective Monday, October 12, 1992. I am confident that you will make an important contribution to Berman Bros.

As discussed, your annual salary will be $62,400 for the next two years. This salary is a draw against commissions and if your commission exceeds $62,400 the additional income will be paid monthly.... In addition, your job performance will be reviewed within 90 days and at a minimum once a year.

. . . .

In addition, there are a lot of people here who will help you begin your career with Berman Bros.

The letter further states that Bonastia would be based in Memphis and would initially be responsible for the territory of Missouri, and later for the territories of Alabama, Arkansas, Louisiana, Mississippi, Oklahoma and Tennessee. Attached to the letter was a description of company benefits, including major medical benefits, long-term disability benefits, a pension plan, a profit-sharing plan, provisions for vacation and sick days, and an annual bonus to be distributed in December 1993.

On October 12, 1992, Bonastia reported to work. That day, he signed and dated a two paragraph document entitled "COMPANY'S COPY OF EMPLOYEE ACKNOWLEDGMENT AND RECEIPT." In the first paragraph, the signer of the document acknowledges having read and received the company's Employee Handbook and agrees to abide by the policies, procedures and rules it contains. The second paragraph provides:

I acknowledge that Berman Bros., Inc. Employee Handbook is not, and is not intended to be, a contract of employment. I also acknowledge that my employment is "at will" and that it will continue only as long as the Company and I mutually agree. I further acknowledge that any assurances, whether relating to continued employment or the terms and conditions of my employment, and whether written, verbal, or otherwise, shall not change my employment-at-will relationship with the Company unless specifically agreed to in writing by the President, and that nothing in this handbook or other manual, publication, practice, or policy of the Company is to be interpreted to the contrary.

On November 2, 1993, Bonastia again signed a copy of the acknowledgment form.[1]

On June 27, 1994, plaintiff was terminated. On July 12, 1994, plaintiff filed suit in Tennessee state court claiming that the October 5, 1992 letter constituted a contract of

---

**1.** Although neither party has provided an affidavit attesting to the authenticity of either the acknowledgment forms or the October 5, 1992 letter, the parties have each submitted copies of the forms and the letters to the court and there is no dispute regarding their authenticity.

employment for a term of two years that commenced on October 12, 1992 and was breached when he was terminated before the expiration of that term. In his complaint, plaintiff seeks compensatory damages for lost wages, as well as consequential and punitive damages and an award of reasonable attorneys' fees.

On August 15, 1994, defendant removed the action to this court. On March 16, 1995, defendant filed this motion, arguing that: (1) plaintiff was an at-will employee subject to termination at any time; (2) even if a valid contract is found to exist, plaintiff may not recover punitive damages in a breach of contract action; and (3) recovery of attorneys' fees is not appropriate absent express language in the contract. For the reasons discussed below, defendant's motion is granted.

## II.  SUBSTANTIVE LAW

### A.  Summary Judgment Standard

■■■ The moving party is entitled to summary judgment where there is no genuine issue of material fact and the party is entitled to judgment as a matter of law. *Fed.R.Civ.P.* 56(c). When considering a motion for summary judgment, the court's function is not to weigh the evidence or judge its truth; rather, the court must determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules ... designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (quoting *Fed.R.Civ.P.* 1). The substantive law governing the case will determine what issues of fact are material. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989).

■■■ A summary judgment movant "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to

the party opposing the motion." *Kochins v. Linden–Alimak, Inc.,* 799 F.2d 1128, 1133 (6th Cir.1986). Once that burden is met, the nonmoving party must set forth specific facts showing a genuine issue of triable fact. *Fed.R.Civ.P.* 56(e). To meet this burden, the non-movant must do more than present some evidence that there is a disputed issue. Rather, the non-movant must present sufficient admissible evidence upon which a jury could return a verdict favorable to the non-moving party. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11. Where a disputed issue of material fact is presented by countervailing admissible evidence, the non-movant's version of such fact is presumed correct. *Eastman Kodak Co. v. Image Technical Services, Inc.,* 504 U.S. 451, 456–58, 112 S.Ct. 2072, 2077, 119 L.Ed.2d 265 (1992).

### B.  Plaintiff's Claim for Breach of Contract

The resolution of this motion turns on whether Bonastia was a contract employee or an employee at-will at the time of his termination. That question raises two discrete issues: whether the October 5, 1992 letter constituted or evidenced a valid employment contract for a term of two years between Berman Bros. and Bonastia and, if so, whether either of the two acknowledgment forms vitiated that contract and created instead an employment at-will. Tennessee law governs the substantive issues raised by this motion. *Erie Railroad v. Tompkins* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938).

#### i.  The October 5, 1992 Letter

■■■ Under Tennessee law, the resolution of a contract's meaning requires the separation of those issues which the court must decide from those properly left to the fact finder. If the terms of a contract are plain, simple, clear and unambiguous, then the question of the parties' intention is one for the court to decide as a matter of law. *See Hamblen County v. City of Morristown,* 656 S.W.2d 331, 334–36 (Tenn.1983); *Shelby v. Delta Air Lines, Inc.,* 842 F.Supp. 999, 1007 (M.D.Tenn.1993), *aff'd,* 19 F.3d 1434 (6th Cir.1994). If, however, the language is ambiguous, then the fact finder must ascer-

tain the intended meaning of the terms used. *Tennessee Consol. Coal Co. v. United Mine Workers of Am.,* 416 F.2d 1192, 1198 (6th Cir.1969), *cert. denied,* 397 U.S. 964, 90 S.Ct. 999, 25 L.Ed.2d 256 (1970); *Shelby,* 842 F.Supp. at 1007. The language of a contract is ambiguous when its meaning is uncertain and is susceptible to more than one reasonable interpretation. *Farmers–Peoples Bank v. Clemmer,* 519 S.W.2d 801, 805 (Tenn.1975). Whether the contract's terms are ambiguous is for the court to determine as a matter of law. *Tennessee Consol. Coal Co.,* 416 F.2d at 1198.

▮▮▮▮ Under Tennessee law, a hiring for a general or indefinite term is presumed to create an at-will employment. *Garrison v. Lannom Mfg. Co., Inc.,* 55 Tenn.App. 419, 402 S.W.2d 462, 467 (1966). Either party to an at-will employment relationship may terminate the employment at any time for "good cause, bad cause, or no cause." *Forrester v. Stockstill,* 869 S.W.2d 328, 330 (Tenn.1994). Consequently, a discharged employee may not recover in a breach of contract action against an employer unless there is a contract of employment for a definite term. *Id.* However, in the absence of evidence showing a contrary intention of the parties, "a hiring for so much per week, or month, or year is a hiring for that period." *Delzell v. Pope,* 200 Tenn. 641, 294 S.W.2d 690, 694 (1956); *see also Ball v. Overton Square, Inc.,* 731 S.W.2d 536, 538 (Tenn.Ct.App.1987); *Ward v. Berry & Assoc., Inc.* 614 S.W.2d 372, 376 (Tenn.Ct. App.1981). In either event, "the intention of the parties as ascertained by the terms of the contract read in the light of the surrounding circumstances will control." *McCall v. Oldenburg,* 53 Tenn.App. 300, 382 S.W.2d 537, 540 (1964).

▮▮▮ Defendant contends that the October 5, 1992 letter merely described plaintiff's compensation and does not evidence an intent to create an employment contract for a definite term. Plaintiff argues that the letter is a valid two-year employment contract.

▮▮▮ The letter is itself not a contract, but may serve of evidence of a prior agreement between the parties. It states "I am pleased that *you will be joining us*" and *"[a]s dis-*

*cussed,* your annual salary will be...." (Emphases added). The letter, therefore, merely memorializes prior conversations between Bonastia and Berman Bros. representatives.

Furthermore, the letter is ambiguous because it is susceptible to more than one reasonable interpretation. As defendant argues, the letter can be read simply as a confirmation of what plaintiff could expect to receive as compensation should he remain with the company for two years. The statement in the letter that Bonastia's job performance "will be reviewed within 90 days and at a minimum once a year," lends support to this interpretation. In other words, the letter contemplates a probationary period followed by regular work product review. A jury could infer from this language that Bonastia was hired only for as long as he met defendant's standards, i.e., that he was an at-will employee.

However, plaintiff's reading of the letter likewise is not unreasonable. The letter states that Bonastia's "annual salary will be $62,400 *for the next two years.*" (Emphasis added). Moreover, the letter speaks in unconditional language, detailing what plaintiff "will be" earning, when he "will" receive his review, and that initially he "will be working" from his home. A jury might thus infer that Bonastia was hired for a definite term of two years.

The decision of the Tennessee Court of Appeals in *Ward,* 614 S.W.2d 372, based on a similar fact pattern supports plaintiff's position. The employer in that case wrote a letter to the plaintiff dated May 26, 1978 stating, in relevant part:

It is understood and agreed that your direct compensation will be $2,000 per month for the first year of your employment. In addition, it is understood that you should earn a bonus of at least $6,000 on, or before, June 1, 1979 ....

*Id.* at 373–74. The court noted that:

the provision of a fixed monthly salary "for the first year," and mention of a year-end bonus strongly imply employment for at least a year and, absent some satisfactory explanation in the form of communications

or dealings between the parties or other circumstances known to both, the obvious meaning of the verbiage is controlling.

*Id.* at 374. The court then held that the language of the letter unambiguously indicated the defendant's intent to hire the plaintiff for at least one year. *Id.* at 376. Furthermore, the rule of *Delzell v. Pope, supra,* that " '[a] hiring at so much per week or month or year is a hiring for that period, provided there are no circumstances to the contrary,' " led the court to the same result. *Id.* (quoting *Delzell,* 294 S.W.2d at 694). *Compare Loeffler v. Kjellgren,* 884 S.W.2d 463, 468 (Tenn.Ct.App.1994) (affirming directed verdict in favor of employer where letter to employee "merely confirm[ed] defendants' 'interest' in employing plaintiff" and "outline[d], per plaintiff's request, plaintiff's 'expectations for compensation' ").

■ In light of these two reasonable interpretations, we find that the letter on its face is ambiguous. Defendant contends, however, that plaintiff's signing of the October 12, 1992 acknowledgment form evidences that the contract was intended to be for an indefinite time. Although the acknowledgment form may have modified the contract, as discussed *infra,* it does not resolve the ambiguity inherent in the initial letter. The rule in Tennessee is that the subsequent acts of the parties may shed light on the contract's meaning, *see Hamblen,* 656 S.W.2d at 335, and is applicable only where the terms of the contract are ambiguous or uncertain. *Fidelity–Phenix Fire Ins. Co. of N.Y. v. Jackson,* 181 Tenn. 453, 181 S.W.2d 625, 631 (1944). The signing of the form, however, is not so unequivocal as to suggest the parties initially intended there not to be a binding contract. Plaintiff may have signed the form for a variety of reasons other than in conformity with an agreement not to be bound. Indeed, the apparent primary purpose of the acknowledgment form which contained the at-will clause was for the employee to acknowledge receipt of the Employee Handbook. Therefore, there was no course of conduct between the parties that would support, as a matter of law, defendant's interpretation of the October 5, 1992 letter.

Accordingly, this court finds that October 5, 1992 letter is ambiguous as to whether the parties entered into a binding two-year employment contract. Therefore, the question of the parties' intent is an issue of material fact to be resolved by the fact finder. The court will now consider defendant's second basis for summary judgment with the assumption, for the purposes of this motion, that the letter evidences an enforceable contract.

ii. *Effect of the Acknowledgment Forms*

■ Defendant argues that even if this court finds that a contract initially existed, summary judgment is appropriate because the signed acknowledgment forms changed that contract into an employment at-will. Defendant bases this argument on the contract theories of merger and modification.

■ Under the doctrine of merger, parties to a contract enter into a subsequent agreement containing the same subject matter as the first, with the result being the original contract merges into the latter and is rescinded. *Bringhurst v. Tual,* 598 S.W.2d 620, 622 (Tenn.Ct.App.1980); *American Fruit Growers v. Hawkinson,* 21 Tenn.App. 127, 106 S.W.2d 564, 568 (1937). The subsequent contract then stands as "the only contract between the parties." *Hawkinson,* 106 S.W.2d at 568. However, for the second contract to supplant the earlier agreement, it must be supported by consideration. *Id.*

"Therefore, if the undertaking by one party is simply to perform the whole or part of what he promised in the original contract, it will not support a promise by the other party to perform what he had previously agreed and something more. Nor (what is substantially the same thing) can an existing contract be altered by mutual assent by an agreement merely to give one party a right or privilege, or subject the other party to a burden which he did not have previously."

*Id.* (quoting 3 *Williston on Contracts,* 3145–46, § 1826).

■ Parties may also modify the terms of an existing contract at any time. *Wright v. Fischer,* 24 Tenn.App. 650, 148 S.W.2d 49, 53 (1940). Like the doctrine of

merger, modification must be supported by consideration. *Hill v. Goodwin,* 722 S.W.2d 668, 671 (Tenn.Ct.App.1986). In the employment context,

> under the traditional view, a promise by an employer or an employee under a subsisting contract to do more or take less than that contract requires is invalid unless the other party gives or promises to give something capable of serving as consideration.

3 Richard A. Lord, *Williston on Contracts* § 7:37 at 605 (4th Ed.1992).

Plaintiff argues that the acknowledgment forms cannot be given legal effect because they were not supported by valid consideration. The court disagrees. Assuming that an enforceable contract existed at the time plaintiff signed the first acknowledgment form, then the form represented an offer by Berman Bros. to modify the contract and create instead an employment at-will. Plaintiff accepted this offer when he voluntarily signed the form. Although plaintiff lost his right to job security for two years by converting the employment to one at-will, he gained the right to leave within that same two-year period. That is, just as defendant would have been committed under the initial contract to employing plaintiff for two years, plaintiff had been similarly committed to working for defendant for two years. *See Savage v. Spur Distrib. Co., Inc.,* 33 Tenn. App. 27, 228 S.W.2d 122, 124 (1949) (in the employment context, "[i]t is a general principle that unless both parties are bound neither is bound"). After plaintiff accepted defendant's offer to modify the contract, both defendant and plaintiff were free to terminate their relationship at any time. Plaintiff's acquisition to the right to leave at will constitutes valid consideration for the modification.

The court holds that even if a contract existed, the first acknowledgment form modified that agreement and gave Berman Bros. the right to terminate plaintiff at will. Accordingly, Berman Bros. is entitled to summary judgment on plaintiff's breach of contract claim. This disposition renders moot defendant's contention that plaintiff is not entitled to recover punitive damages or attorneys' fees.

### III. *CONCLUSION*

For the reasons discussed above, defendant's motion for summary judgment is granted.

IT IS SO ORDERED.