E. N. D̦ELZELL

*v.*

C. W. Pope and Executive Board of Tennessee
Baptist Convention

(*Nashville,* December Term, 1955.)

Opinion filed July 20, 1956.

Rehearing Denied September 3, 1956.

642

James P. Brown, Knoxville, J. L. Reynolds, Nashville, for complainant.

Jackson, Tanner & Leathers, Nashville, Egerton, McAfee, Armistead & Davis, Knoxville, for defendants.

Mr. Chief Justice Neil delivered the opinion of the Court.

The complainant, E. N. Delzell, filed his original bill in the Chancery Court at Nashville against C. W. Pope and the Executive Board of the Tennessee Baptist Convention, seeking damages for an alleged breach of contract of employment.

The bill charges the following: that the Executive Board of the Tennessee Baptist Convention is a corporation organized and existing under the laws of the State of Tennessee; that it acts as the representative of the said Convention pursuant to the constitution of the latter, in carrying on the work for which it is organized. In other words, by Article 6 it "shall (during the interim between meetings of the Convention) have all the powers of the Convention except as limited by the Constitution."

The complainant further charges that he was employed on January 1, 1942, by a committee representing the Executive Board to increase the circulation of the Baptist and Reflector, the State Baptist paper, and in 1945 was promoted to the office of business manager of said publication, and in 1949 was elected to the office of "Brotherhood Secretary"; that he served as Brotherhood Secretary until March 1, 1955, when he was summarily dismissed from his position.

It is charged that the fiscal year of the State Baptist Convention is from November 1 to October 31 of the following year and a yearly budget is adopted for the "Brotherhood Department", and among the numerous items was included his salary of $6,300; that he was paid the sum of $3,150 from the beginning of the fiscal year 1954 to the time of his dismissal from office. The bill further charges that he was 58 years of age and would have been subject to retirement at age 60 and, by reason of his dismissal, he was deprived of retirement benefits.

It is further charged in the bill that no charges were filed and he was given no notice of his dismissal from office; that he had made engagements for carrying on a definite program on behalf of the Brotherhood which had been his custom for the years he had served as Brotherhood Secretary; that the Executive Board did not prior to March 1, 1955, "give notice to the complainant that he would not serve as Brotherhood Secretary during the whole year, but in their every action indicated to the complainant that he would serve the whole year, all of which led the complainant to believe that he would be able to perform his duties as State Secretary for the fiscal year as aforesaid, and that the aforementioned acts on the part of the defendants in this lawsuit amounts

to an implied contract with the complainant for his service during the fiscal year of 1954 and 1955 of the Tennessee Baptist Convention."

The charge is further made that the defendant, Pope, was largely responsible for the election of the present members of the Executive Board and that he dominates the Board and, in effect, influences their action. In paragraph V. (five) of the bill the complainant charges the following:

"Your complainant would show that the defendant C. W. Pope entered into a conspiracy with the members of the Administrative Committee, as aforesaid, and the Executive Board, as aforesaid, in which the complainant would be dismissed from the office of Secretary of the State Brotherhood without rhyme or reason, and without charges, the evidence of which is contained in the Preliminary Statement and Opinion of the Executive Committee, which is filed as an exhibit to this bill."

The bill sets out in some detail the activities of the Committee in a meeting called by C. W. Pope to investigate certain rumors regarding the alleged misconduct of himself and his secretary. Finally it is charged that by reason of his wrongful and fraudulent dismissal from office and his dismissal from the Baptist Convention he is entitled to a judgment "due to the fact that he entered into an implied contract for the whole year."

The prayer of the bill is: (1) that he be awarded damages in the sum of $10,614; (2) that he be granted such other further and general relief as he may be entitled to upon the pleadings and proof in the case.

The defendants filed separate demurrers to the bill, but upon identical grounds, with only one exception. The one exception, filed by C. W. Pope, is as follows:

"The bill shows that Defendant, Pope is not a proper party, to this action, having no interest in the subject matter of the suit, and not being in any way liable to Complainant."

Considering now the several grounds of the demurrers, as common to both of the defendants, the principal complaint is that the bill shows on its face that complainant seeks a recovery for breach of an implied contract and that the facts alleged if true did not amount to an implied contract between the complainant and the Executive Board for services during the fiscal year referred to. Contention is made that complainant "has alleged no facts from which an implied contract can be inferred, and therefore it was not necessary that the Executive Board have a cause or reason for Complainant's dismissal." The second ground is in substance a repetition of the first, as above stated in detail. (3) There is no showing of any mutuality of agreement and that complainant bound himself to the Board for any fixed period of time. (4) There is no showing of any express contract and that complainant was engaged for a definite term. (5) That upon the facts alleged the complainant's claim "would be void under the Statute of Frauds because not in writing." (6) That the bill shows that any loss of alleged retirement benefits is not an element to recover for breach of the employment contract. (7) and (9) are repetitious and more or less argumentative of the aforegoing assignments.

The Chancellor sustained both of the demurrers and granted an appeal to this Court. While the Chancellor

allowed the complainant 20 days in which to amend the bill it appears that he elected to stand on the original bill and the demurrers.

The assignments of error are: (1) The court erred in sustaining the demurrers and dismissing the bill as to the defendant C. W. Pope. (2) The Chancellor erred in sustaining the demurrer of the Executive Board because the original bill alleged in substance the following facts:

"a. The budget for the Brotherhood Department showing an annual amount payable to the Secretary.

"b. The Executive Board allowed complainant to plan the year's program.

"c. The Executive Board permitted complainant to accept speaking engagements for the future.

"d. Complainant was not told prior to his discharge that he would not serve as Brotherhood Secretary during the whole year."

Contention is made that proof of the foregoing facts and circumstances was sufficient to justify the conclusion that there was an implied contract which the defendants had breached. Other assignments purport to question the reasons upon which the demurrers were sustained, but they are based more or less upon assumptions of counsel.

When the case was orally argued before us one of the able counsel for the defendants made the frank statement that the determinative question for consideration on this appeal was whether or not the bill alleged sufficient facts which, if true, would justify a fair and reasonable inference that there was an implied contract of employment.

■ We are in full agreement with counsel that the suit cannot be maintained upon the allegation that there was an implied contract. This standing alone is simply the conclusion of the pleader.

Whether or not the bill is demurrable as to C. W. Pope we will deal with this question later on in this opinion.

■ ■ At the outset we think the bill is demurrable insofar as the complainant seeks a recovery for alleged loss of retirement benefits, since he was not eligible for retirement when he was dismissed by the Board. It is not an element of damages to be recovered for breach of an implied contract.

■ The demurrer admits the truth of all relevant facts bearing upon the contractual relationship between the parties at the time of the alleged dismissal of the complainant and prior thereto.

The complainant had been officially connected with the Executive Board of the Tennessee Baptist Convention since 1942, and was continuously employed in some important capacity (not necessary here to specify) until 1949 when he was chosen as Brotherhood Secretary. The budget which was adopted for the Brotherhood Department shows that the complainant was considered as being competent and trustworthy to administer a program which called for an annual expenditure of $20,474.56. Provision was made for the *annual* salary of the complainant at $6,300. Other items of expense are:

"Travel, car bonus and promotion_____$2,000.00

Office secretary's salary_____ 2,520.00

Field Workers _____ 500.00

Office expense _____ 250.00

| | |
|---|---|
| Postage | 1,000.00 |
| Baptist and Reflector space | 1,559.00 |
| Printing and Literature | 1,000.00 |
| Telephone and Telegraph | 160.00 |
| Retirement dues | 535.56 |
| Miscellaneous | 350.00 |
| Royal Ambassador Secretary's salary | 3,000.00 |
| Royal Ambassador Secretary's travel | 1,000.00 |
| Royal Ambassador Committee expense | 100.00 |
| Royal Ambassador Congress | 200.00 |

The foregoing budget shows beyond question that the Board contemplated an intensive and expanding yearly program by the Brotherhood Department.

The complainant was paid his salary as Secretary for the first six months, or the sum of $3,150. We think it is fair to say that the complainant planned a program for the entire year. He had rendered the same, or similar, service since 1949. In these circumstances it would be most unreasonable to infer that he was employed upon a month to month basis and was subject to dismissal on a moment's notice.

It is true, as argued by counsel for the Executive Board, that there is nothing in the bill to show an express contract between the parties. The complainant's suit is not based upon such a contract, either oral or written. It rests solely upon an implied understanding based upon a course of conduct between the complainant and the Board, and was of sufficient duration to bind the parties.

The problem presented in the present controversy, that is, the right of the complainant to recover compensation

for a year, based upon custom and conduct of the parties, is not without its difficulties. We think the allegations in the bill clearly point to a year to year understanding. Each succeeding year would, by implication, constitute a new contract of employment. It is not disputed, but rather shown in the complainant's bill, that he had worked for the Board as Brotherhood Secretary for several years, or from 1949 to 1954. In the foregoing circumstances the applicable rule of law is as follows:

"The general rule is that when, upon the expiration of a contract of employment for a definite term, the employee continues to render the same services as he rendered during the term of the contract without explicitly entering into any new agreement, it will be presumed *prima facie* that he is serving under a new contract having the same terms and conditions as the original one." 35 Am.Jur., Section 15, page 454. See also Section 23, page 460.

There are a number of decisions to the contrary as pointed out on the brief of counsel for the Board. The divergence of view between the English and American decisions as to the duration of a contract of employment appears in the annotations in 11 A.L.R. 469, and 100 A.L.R. 834.

In England, a general hiring is regarded as one for a year. In this country, an indefinite hiring is regarded as one at will. The conflict in the authorities seems to have arisen out of the effort to determine what is a *general or indefinite* hiring. According to the English rule "if a master hire a servant without mentioning the time, that is a general hiring, and, in point of law, a hiring for a year." 11 A.L.R. 470. The American decisions seem to turn entirely upon what constitutes an indefinite

hiring of a servant. The annotator says, 11 A.L.R. 471, "No case has been found which attempted to state a reason why a hiring at a certain price per week, month, or year was regarded as indefinite."

■ We think the American authorities, cited on the brief of counsel, and others referred to in A.L.R., *supra,* support the general proposition that a hiring at so much per week, or month, or year is a hiring for that period, provided there are no circumstances to the contrary. Thus in *Alkire v. Alkire Orchard Co.,* 1917, 79 W.Va. 526, 91 S.E. 384, it is held: Employment of one as manager at a stipulated salary per month is a mere monthly employment, and may be terminated at the end of any month by either party.

Finally the annotator says:

"Practically every case which has held that hiring at a certain price per month or year is indefinite, and terminable at will, has, without argument, directly or indirectly, followed a textbook which lays down that proposition without any authority whatever to support it."

■ In 100 A.L.R. 834-841 (supplementing annotations in 11 A.L.R. 469) numerous cases are cited to the effect that circumstances surrounding the parties will control. At page 841 the annotator says: "There are many decisions holding that in the light of *surrounding circumstances* the hiring was for a definite period." (Emphasis ours.) If, under all circumstances, considering the fact that an employment has continued without interruption for a period of years, (in the instant case 5 years) and at a fixed annual salary, we think the employment is for a definite period and is not terminable at will.

In conclusion we think the learned Chancellor was in error in sustaining the demurrer of the Executive Board and dismissing the complainant's bill as to said defendant.

The Chancellor, however, was correct in sustaining the demurrer of C. W. Pope. There are no facts stated in the complainant's bill which, if true, would justify a judgment against him and in favor of the complainant. The charge in the bill that he conspired with the members of the Executive Board is a conclusion of the pleader. The charge that he dominates the Board, and was a powerful influence in controlling its action, is a mere conclusion. There is no recitation of facts which justifies the conclusion that his conduct in the premises was such as to create any legal liability.

The cause is reversed and remanded for such further proceedings as may be consistent with this opinion.

On Petition to Rehear.

The Executive Board of the Tennessee Baptist Convention, who was one of the appellees in this cause, has filed a petition to rehear complaining that the Court erred in holding that the original bill alleged sufficient facts to make a case of an implied contract between it and Mr. Delzell.

The petitioner makes the following contention:

"It is most respectfully, earnestly and urgently insisted that *the Court may search the original bill filed herein without finding a single allegation*:

"1. That complainant had in any form or manner an express contract of employment; or

"2. That complainant had originally been hired for an annual period (or any other definite period which

was extended by implication, express action or failure to take action) ; or

"3. That hiring by the Executive Board was customarily on an annual basis or that it was a custom to hire the Brotherhood Secretary for annual periods."

No one contends that there was an express contract of employment. The Court rested its decision upon the alleged custom and course of conduct of the Board in carrying on its varied activities, and that the facts stated in the bill made a *prima facie* case of an implied agreement that the complainant would hold the office of "Brotherhood Secretary" for the year beginning in 1954 and ending in 1955. The annual budget was considered as having an important bearing on this issue.

The original bill showed that an annual budget was adopted by the Board every year since 1949. The budget included the salary of the Secretary, expenses of the office, as well as providing funds necessary to carry on a yearly program, including the year, 1954-55. It is very true the budget did not mention Mr. Delzell by name, but only referred to him as Secretary of the Baptist Brotherhood. The original bill states that the Board allowed complainant to plan an entire year's program for the Department. It is not a matter of dispute that the Board knew full well that Mr. Delzell was the Secretary and that he was the person whose duty it was to carry on the program. In these circumstances there is no merit in the contention by the petitioner that providing a salary for an office (annual salary of $6,300) would not impliedly bind the Board to fulfill its contract with the unnamed occupant of that office.

In further support of the insistence it is argued: "It seems clear that these engagements were for the occupant of the office of secretary but in any event it is nothing more or less than future planning. It is an *incident of employment* * * *" (Emphasis ours.) We think it is not only an "incident of employment", but is material evidence to sustain the averment in the bill that there was an implied agreement; that the "planning" was to carry on and complete a yearly program.

The counsel for the Board has cited numerous cases in support of the Board's theory. These cases and others were considered in the original opinion, and need not be again considered and distinguished from the rule followed by us as controlling authority.

With all deference to the petitioner and its counsel we feel that our original opinion is correct. The petition to rehear is accordingly denied.

PREWITT, TOMLINSON and SWEPSTON, JUSTICES, concur.

BURNETT, JUSTICE, did not participate in this case.