Lester M. CHAVEZ, et al.

v.

BROADWAY ELECTRIC SERVICE CORPORATION.

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

May 17, 2007 Session.

June 27, 2007.

Permission to Appeal Denied by Supreme Court Oct. 15, 2007.

Edward L. Summers and Michael J. Stanuszek, Knoxville, Tennessee, for the Appellant, Broadway Electric Service Corporation.

Andrew S. Roskind, Knoxville, Tennessee, for the Appellees, Lester M. Chavez, Judy A. Chavez, and Roger S. Davy.

## OPINION

SHARON G. LEE, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and D. MICHAEL SWINEY, JJ., joined.

The Plaintiffs, Lester M. Chavez, Roger S. Davy, and Judith Chavez, were formerly employed at the U.S. Department of Energy ("DOE") facility in Rocky Flats, Colorado. The Plaintiffs moved to Tennessee to work at the DOE facilities in Oak Ridge for the Defendant. Mr. Chavez and Mr. Davy were told by the Defendant that there was enough work for them for "ten years." Mrs. Chavez was promised a job with the Defendant for one year. When the work did not materialize as anticipated, the Plaintiffs brought this action for breach of contract, fraudulent misrepresentation, and promissory estoppel against the Defendant. The trial court, applying the promissory estoppel doctrine, awarded Mr. Chavez damages in the amount of $25,661 and awarded Mr. Davy $31,219 in damages. The trial court found that the Defendant breached an oral employment contract with Mrs. Chavez, and awarded her damages in the amount of $4,463. We affirm the trial court's factual findings, but disagree with the trial court's conclusion that the facts support a judgment for Mr. Chavez and Mr. Davy under the promissory estoppel doctrine. Specifically, we hold that the employer's representations to the Plaintiffs regarding the general condition of the job market in Oak Ridge were too ambiguous and vague to be held as "promises" supporting an action for damages. In the absence of an enforceable employment contract and any finding of misrepresentation or fraud on the employer's part, we reverse the judgment for Plaintiffs Mr. Chavez and Mr. Davy under promissory estoppel. We affirm the trial court's judgment awarding Mrs. Chavez damages for breach of an oral employment contract for a one-year period.

## I. Background

This case began as two separate actions against Broadway Electric Service Corporation ("BESCO"), one by Lester and Judy Chavez and the other by Roger S. Davy, but because of their similarity in factual allegations and legal theories, they were consolidated and tried together. In 2003, both Mr. Chavez and Mr. Davy were employed as electricians at the U.S. Department of Energy's ("DOE") facility in Rocky Flats, Colorado. DOE ordered a permanent shutdown of the Rocky Flats facility in early 2003, and began disman-

tling and downsizing its workforce. Although it was clear that Mr. Chavez and Mr. Davy had a limited amount of employment remaining at Rocky Flats, the shutdown was done gradually, and they each testified that they thought they would be able to continue working there for another two to three years at most. Rocky Flats was a secure DOE facility, and both Mr. Chavez and Mr. Davy had a security clearance that enabled them to work at such a facility.

Sometime in early 2003, a local union steward told Mr. Chavez about a contracting firm in the Oak Ridge, Tennessee, area that was looking for electricians with security clearances to work at the DOE facilities in Oak Ridge. Mr. Chavez also saw a flyer posted by BESCO that advertised employment positions in Oak Ridge, stating as follows:

Following is information for the positions in Oak Ridge, TN at the DOE Sites for BESCO[:]

We offer the prevailing wage for all craft employees through the individual Unions plus $1.00 per hour. If there is no work for a particular craft, we can utilize the individuals as "Escorts," you will continue with the same pay scale. Should you not be a member of any Union and want to work as an "Escort" only, we processed [sic] through the Labors Local # 818. The pay is a flat $15 per hour, BESCO pays the Installation Fee ($350.00) and you are responsible for the dues.

With either Local Union you will be paid $45.00 per working day per diem. This will be paid after six (6) weeks employment and every four (4) weeks thereafter for up to one (1) year.

\* \* \*

There is lots of work in Oak Ridge and BESCO has contracts at all three Oak Ridge Sites. Our Company has been in

business in this area and on the DOE sites more than 50 years. Anyone with an "L" or "Q" [security] clearance will not have a problem finding work in the area. There is always a need for cleared personnel by all the Oak Ridge Companies with DOE contracts.

Mr. Chavez contacted Travis Mayton, a BESCO field superintendent responsible for hiring workers for BESCO's DOE contracts, in March of 2003. Mr. Chavez testified that during their initial phone conversation, Mr. Mayton offered him a job. Mr. Chavez described the terms of the job offer as "work up to ten years, a dollar on top of the base salary for my clearance, per diem of $45 a day per day worked, overtime approximately 16 to 20 hours a week." Mr. Chavez testified that the base hourly wage offered him by BESCO was $21.67 an hour.

Shortly thereafter, Mr. Chavez traveled to Oak Ridge to meet with Mr. Mayton and to look at the DOE facilities. At that meeting, Mr. Mayton confirmed BESCO's offer, told Mr. Chavez that BESCO had contracts for all three of DOE's Oak Ridge facilities and, according to Mr. Chavez, told him that "there was enough work for ten years and he wished there were—he had 40 more electricians like me with Q clearances because he could keep us all employed." Mr. Chavez stated that based on his observations, he concluded that there was indeed an abundance of work in Oak Ridge for electricians in March of 2003.

Mr. Chavez testified that he accepted BESCO's offer "sometime in April or May" of 2003. Mr. Chavez contacted Mr. Mayton numerous times to confirm that the job offer was still good before turning in his separation papers with his employer at Rocky Flats. Mr. Chavez testified that he decided to move his family to the Knox-

ville area because BESCO "kept assuring me that there was work for me for ten years and at least a year of work for my wife as an escort."[1]

Mr. Chavez started work for BESCO as an electrician, working at a DOE construction site in Oak Ridge, in August of 2003. The arrival of the Chavez family in East Tennessee coincided with a serious downturn in the amount of construction work available to BESCO under the DOE contracts. Among other things, DOE budgetary constraints and a delay in Congressional funding caused BESCO temporary construction delays and a general temporary downsizing of its workforce. Mr. Chavez worked for BESCO for approximately eleven weeks, and on October 16, 2003, he was furloughed for lack of work. Mr. Mayton assured Mr. Chavez that the furlough was only temporary, and told him to check back regularly to see if work had become available. Each time Mr. Chavez called in to check, Mr. Mayton assured him that the work slowdown was temporary, and that work would be available soon.

Mr. Chavez began looking for another job in November of 2003. He found work as an escort, accompanying persons without security clearance on the secured DOE sites, in November of 2003, and continued in that position for approximately 13 months, earning $13.50 per hour. In March of 2005, Mr. Chavez was hired by another contracting firm as an electrician, working at the Oak Ridge Y–12 plant and earning between $23 and $24 per hour.

Mrs. Chavez also had been employed at the Rocky Flats facility, and her employment there ended on May 29, 2003. Mrs. Chavez testified that she also spoke with Mr. Mayton about employment with BESCO, and that he offered her a job as an escort for one year "for $15 an hour with

some overtime and $45 a day per diem for the first year." Mrs. Chavez testified that she accepted the offer at the same time that Mr. Chavez accepted his. When Mrs. Chavez showed up for work with BESCO in September of 2003, she spoke with Brenda Crisp, Mr. Mayton's project assistant. Ms. Crisp told her that "they had not transferred my clearance; it had been terminated when my employment was terminated at Rocky Flats." Without a security clearance, Mrs. Chavez was unable to work as an escort at the DOE facilities. Mrs. Chavez began looking for other work, got her clearance reinstated through a temporary employment agency in Oak Ridge, and began work with another company as an escort in mid-November of 2003, earning $15 per hour.

Mr. Davy's story is similar to that of Mr. and Mrs. Chavez. Mr. Davy also saw the BESCO flyer advertising work in Oak Ridge. Realizing his time at Rocky Flats was limited due to the shutdown, he spoke with Ms. Crisp about the prospects of employment in Oak Ridge. Mr. Davy testified about the terms of Ms. Crisp's employment offer to him as follows:

Q: What happened after you sent your resume to Ms. Crisp?

A: Well, I called her to make sure she got it and she liked it. And I asked her the question, you know, "Do you still need electricians?" She said, "Yes, we'll hire you under the circumstances of your resume."

Q: Were any terms of employment discussed at this time?

A: Yes. The rate of pay would be $21.67 an hour, there would be $45 per day per diem and she said she could probably match the overtime I was getting at the time.

1. As a security measure, DOE employs individuals with security clearances as "escorts" to accompany persons who are not security-cleared around its facilities.

Q: Was there any discussion of any other types of benefits or anything else that would have been attached to this job?

A: Well, I did ask her the terms of longevity there because it was important to me, and she said there was probably ten years or more of work on the books there. And that was important because I needed that much longer to retire and that would have worked out perfect for me.

Q: Did you accept that job offer at that time?

A: Yes, I did.

When Mr. Davy showed up for work at BESCO on September 29, 2003, he met Mr. Mayton, who told him that "he didn't have anything at the time and to check back next week with him." Mr. Davy kept checking back in for two months, and he was continually assured that work would become available soon. Mr. Davy worked for BESCO one week in early December of 2003, after which he was given a notice of furlough for lack of work. Mr. Davy began working through a temporary employment agency as an escort in January of 2004, then took a job as a janitor at Oak Ridge National Laboratory in June of 2004. In November of 2004, Mr. Davy was hired as an electrician by UT–Battelle, and at the time of the hearing, he was earning $26.78 per hour plus benefits.

In late 2004, Mr. and Mrs. Chavez and Mr. Davy sued BESCO, alleging breach of contract, fraudulent and/or negligent misrepresentation, promissory estoppel (also known as detrimental reliance), and violation of Tenn.Code Ann. § 50–1–102. After a bench trial, the trial court held that Mr. Chavez and Mr. Davy failed to establish their breach of contract claims, and that BESCO had not made any misrepresentation or false statement to the Plaintiffs. The trial court found, however, that BES-CO had made "certain representations and promises" to the Plaintiffs regarding the strength of the Oak Ridge job market and the availability of work, and that the Plaintiffs had reasonably relied on these promises to their detriment. Finding for Mr. Chavez and Mr. Davy on the equitable theory of promissory estoppel, the trial court awarded Mr. Chavez damages in the amount of $25,661, and awarded Mr. Davy $31,219 in damages.

Regarding Mrs. Chavez's claim, the trial court found that she and BESCO had entered into an oral one-year employment contract, which BESCO breached when she came to work in late September and was told no work was available. The trial court awarded Mrs. Chavez damages in the amount of $4,463.

## II. Issues Presented

BESCO appeals, raising the following issues for appellate consideration:

1. Whether the trial court erred in awarding Mr. Chavez and Mr. Davy damages under the equitable doctrine of promissory estoppel.

2. Whether the trial court erred in awarding damages to Mrs. Chavez for breach of oral employment contract in the absence of a written employment agreement.

Additionally, the Plaintiffs raise the following issues:

3. Whether the trial court erred in determining the Plaintiffs could not recover under Tenn.Code Ann. § 50–1–102.

4. Whether the trial court incorrectly determined the amount of damages due the Plaintiffs by not taking into account lost per diem payments, overtime, and other employment benefits.

### III. Standard of Review

In a non-jury case such as this one, we review the record *de novo* with a presumption of correctness as to the trial court's determination of facts, and we must honor those findings unless the evidence preponderates to the contrary. Tenn. R.App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn.1993). When a trial court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to the trial court's factual findings. *Seals v. England/Corsair Upholstery Mfg. Co., Inc.*, 984 S.W.2d 912, 915 (Tenn.1999). The trial court's conclusions of law are accorded no presumption of correctness. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn.1996); *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn.1993).

### IV. Analysis

#### A. Mr. Chavez and Mr. Davy's Claims

##### 1. Employment–At–Will Doctrine

It is undisputed that no written employment contract was executed in this case. At trial, Mr. Chavez and Mr. Davy argued that they each had entered into an enforceable oral contract of employment for a ten-year period. The trial court alluded to the fact that the statute of frauds, Tenn. Code Ann. § 29–2–101(a)(5)[2], requires a contract for employment for more than one year to be in writing, and thus, generally speaking, bars an action to enforce an alleged oral agreement for a ten-year employment term. Further, the trial court found that BESCO did not offer or agree to employ either of the Plaintiffs for ten years, a finding that is supported by the record and will be further discussed in the promissory estoppel analysis below.

Because the employment relationship between BESCO and Mr. Chavez and Mr. Davy was not established or formalized by a contract for a definite term, Tennessee's employment-at-will doctrine applies to that relationship. The employment-at-will doctrine "has been a part of Tennessee's common-law legal tapestry for more than a century." *Bennett v. Steiner–Liff Iron & Metal Co.*, 826 S.W.2d 119, 121 (Tenn. 1992). The Tennessee Supreme Court has described the at-will employment doctrine, and the reasons supporting the doctrine, as follows:

> Tennessee has long adhered to the employment-at-will doctrine in employment relationships not established or formalized by a contract for a definite term. *See, e.g., Bennett v. Steiner–Liff Iron & Metal Co.*, 826 S.W.2d 119, 121 (Tenn. 1992). Under this "employment at will" doctrine, both the employer and the employee are generally permitted, with certain exceptions, to terminate the employment relationship at any time for good cause, bad cause, or no cause. *See Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 574 (Tenn.1999). This relationship recognizes (1) that employers should be free to make their own business judgments without undue court interference, *see Mason v. Seaton*, 942 S.W.2d 470, 474 (Tenn.1997), and (2) that employees may refuse to work for a person or company and may exercise their rights in the same way, to the same extent, for the same cause or want

---

**2.** Tenn.Code Ann. § 29–2–101(a)(5) provides that "No action shall be brought ... [u]pon any agreement or contract which is not to be performed within the space of one (1) year from the making of the agreement or contract[,] unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person lawfully authorized by such party."

of cause as the employer, *see Payne v. Western & Atl. R.R.*, 81 Tenn. (13 Lea) 507, 518–19 (1884), *overruled on other grounds, Hutton v. Watters*, 132 Tenn. 527, 544, 179 S.W. 134, 138 (1915). Indeed, this Court has noted that an employer's ability to make and act upon independent assessments of an employee's abilities and job performance as well as business needs is essential to the free-enterprise system. *Mason*, 942 S.W.2d at 474 (quoting *Clifford v. Cactus Drilling Corp.*, 419 Mich. 356, 353 N.W.2d 469, 474 (1984)). *Crews v. Buckman Laboratories Intern., Inc.*, 78 S.W.3d 852, 857–58 (Tenn.2002)(internal brackets and quotation marks omitted); *see also Cantrell v. Knox County Bd. of Educ.*, 53 S.W.3d 659, 662 (Tenn.2001). Thus, Mr. Chavez and Mr. Davy were employed with BESCO on an at-will basis, and their claims are properly analyzed against the backdrop of the employment-at-will doctrine.

In the case of *Delzell v. Pope*, 200 Tenn. 641, 294 S.W.2d 690 (Tenn.1956), the Supreme Court stated that the applicable general rule regarding employment for a specific period of time is that "a hiring at so much per week, or month, or year, is a hiring for that period, provided there are no circumstances to the contrary." *Id.* at .694. The *Delzell* Court made it clear that the specific circumstances of the particular case must be examined to see if there are any facts or equitable considerations "to the contrary" of the general rule. *Id.; see also McCall v. Oldenburg*, 53 Tenn.App. 300, 382 S.W.2d 537, 540 (Tenn.Ct.App. 1964); *Shipley v. Herman Grant Co.*, 673 S.W.2d 149, 151 (Tenn.Ct.App.1983); *Parrish v. Better–Bilt Aluminum Products Co.*, 1990 WL 33377, at *3–4 (Tenn.Ct.App. M.S., Mar. 28, 1990). The Plaintiffs in the present case, who were hired at an hourly wage, argue that their circumstances present a situation where the general rule should not be applied and that the trial court should have ruled that they were hired for an enforceable ten-year period. Keeping in mind the general rule as enunciated by the Supreme Court in *Delzell*, the statute of frauds, and Tennessee's at-will employment doctrine, we examine the facts and equities of the Plaintiffs' situation in further depth below.

### 2. Promissory Estoppel

 BESCO argues that the trial court erred in awarding damages pursuant to the doctrine of promissory estoppel, sometimes also referred to as "detrimental reliance." Promissory estoppel has frequently been defined as follows: "a promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Alden v. Presley*, 637 S.W.2d 862, 864 (Tenn.1982); *Calabro v. Calabro*, 15 S.W.3d 873, 878 (Tenn.Ct. App.1999); *Barnes & Robinson Co. v. OneSource Facility Services, Inc.*, 195 S.W.3d 637, 645 (Tenn.Ct.App.2006). As the definition suggests, promissory estoppel is an equitable doctrine, and its limits are defined by equity and reason. *Alden*, 637 S.W.2d at 864; *Calabro*, 15 S.W.3d at 879; *Wilson v. Smythe*, No. M2003–00645–COA–R3–CV, 2004 WL 2853643, at *10 (Tenn.Ct.App.M.S., Dec. 10, 2004).

 To succeed on their promissory estoppel claim, the Plaintiffs were required to show (1) that a promise was made; (2) that the promise was unambiguous and not unenforceably vague; and (3) that they reasonably relied upon the promise to their detriment. *See Rice v. NN, Inc. Ball & Roller Division*, 210 S.W.3d 536, 544 (Tenn.Ct.App.2006); *Calabro*, 15 S.W.3d at

879; *Amacher v. Brown–Forman Corp.*, 826 S.W.2d 480, 482 (Tenn.Ct.App.1991); *Wilson v. Price*, 195 S.W.3d 661, 670 (Tenn.Ct.App.2005). A claim of promissory estoppel is not dependent upon the existence of an express contract between the parties. *EnGenius Entertainment, Inc. v. Herenton*, 971 S.W.2d 12, 19 (Tenn. Ct.App.1997); *Wilson*, 195 S.W.3d at 670. "The key element in finding promissory estoppel is, of course, the promise." *Amacher*, 826 S.W.2d at 482.

As to whether BESCO made a promise to the Plaintiffs, the trial court found that "the record is clear that certain representations and promises were made by agents of the Defendant to Plaintiffs Lester Chavez and Roger Davy, to wit: that the Oak Ridge construction market was strong and solid, that there was years of work to be done, that overtime would be plentiful, and that anyone with a security clearance would have no difficulty finding work in Oak Ridge." The record supports these findings; but we are of the opinion that these statements are not fairly characterized as "promises" and more accurately described as general descriptions of the job market for electricians in Oak Ridge at the time they were made. We find that the "promises" found by the trial court to have been made by BESCO to Mr. Chavez and Mr. Davy were too ambiguous, vague, and nonspecific to support Plaintiffs' claims for damages in the present case.

Regarding Plaintiffs' claims of BESCO's promise to employ them for a period of ten years, the trial court specifically found that no such promise was made. Mr. Mayton testified that he had never made a promise of employment for a specific duration, because the nature of BESCO's contractual construction work was uncertain, and susceptible to large upswings, downswings, and delays. Mr. Davy testified that Ms.

Crisp told him only that "there was probably ten years of work on the books there," and that BESCO could "probably" match the overtime he had been working at Rocky Flats. Mr. Chavez testified that Mr. Mayton "did not say, 'I guarantee you employment for ten years, no. He said he had work for me for ten years and work for my wife for one ... [He said] he could keep me busy for ten years.'" The evidence in the record does not preponderate against the trial court's factual finding that BESCO did not promise to hire the Plaintiffs for a ten-year period.

The evidence presented by BESCO indicates that the primary reason it was unable to employ the Plaintiffs for a longer period of time was an unexpected and dramatic decline in construction work around the time they arrived in the Oak Ridge area. BESCO's chief financial officer, Michael Holloway, testified at trial. Mr. Holloway presented two charts in explanation of his testimony that beginning around August of 2003, BESCO incurred a serious slowdown in construction work. One graph showed that from the period beginning August 2003 and ending around August 2004, the number of hours worked by its electricians was consistently below the average of hours worked during the period from January 2002 through November 2005. In November of 2003, the total number of hours worked by BESCO electricians was roughly half the average for the entire period. A second graph showed that in November 2004, the total number of electricians employed and working for BESCO was approximately 26, which is 24 workers below the average number of 50 for the same time period. Conversely, during the first half of 2003, the number of electricians employed by BESCO, and the number of hours worked, was consistently either at or significantly above the average.

The trial court found as follows regarding Mr. Holloway's testimony and the supporting graphs admitted into evidence:

These graphs demonstrate the irregular nature of work with BESCO,[3] evidencing sharp rises and drops from month to month in the number of hours worked and employees utilized by BESCO during that period. Most significantly, however, the graphs demonstrate that approximately in August of 2003 there was a sharp and sustained drop in both the number of hours and employees utilized by BESCO. This drop continued until approximately September of 2004 ... Nothing in these exhibits, and no testimony introduced at trial would suggest that BESCO had any reason to anticipate this "depression," for lack of a better word. It is significant that during the period that the Plaintiffs were discussing possible employment with BESCO, BESCO's numbers were generally well above average in terms of manpower utilized and hours worked. It is further significant that the downturn in BESCO's employee utilization coincided almost precisely with Plaintiffs' relocation to East Tennessee looking for work with BESCO.

\* \* \*

Nothing in the record suggests or indicates that at the time the Defendant made representations to the Plaintiffs with regard to the state of the labor market in Oak Ridge it had any knowledge or reason to suspect the unusual decrease in construction activity which occurred from August 2003 through September 2004.

Both Mr. Davy and Mr. Chavez stated that they were aware of the potential for volatility in the construction business.

Mr. Chavez stated that he recognized that construction electrical work is more susceptible to layoffs and fluctuations than maintenance electrical work, and that "the construction market on Oak Ridge ebbs and flows depending on the [DOE's] intentions and their acts." Mr. Davy testified that he recognized that "layoffs are common in construction work." Mr. Mayton testified to the effect that some 12 to 15 other electricians were furloughed or laid off at around the same time as Mr. Chavez and Mr. Davy were furloughed, and that he would have put them back to work as soon as any had been available.

This court has stated that the doctrine of promissory estoppel is not to be liberally applied, and its application is limited to exceptional cases where the circumstances border on actual fraud:

Tennessee does not liberally apply the doctrine of promissory estoppel. To the contrary, it limits application of the doctrine to exceptional . cases. *Shedd v. Gaylord Entertainment Co.*, 118 S.W.3d 695, 700 (Tenn.Ct.App.2003) (limiting the application to "exceptional cases where to enforce the statute of frauds would make it an instrument of hardship and oppression, verging on actual fraud").

*Barnes & Robinson Co.*, 195 S.W.3d at 645; *Wilson v. Smythe*, 2004 WL 2853643, at 10; *Johnson v. Allison*, No. M2003-00428-COA-R3-CV, 2004 WL 2266796, at *8 (Tenn.Ct.App.M.S., Oct. 7, 2004)(stating "Our courts have stated on numerous occasions that estoppel is not favored under our law ... [Because] the application of promissory estoppel in contract cases creates an exception to the Statute of Frauds, it should not be applied too liberally lest the exception swallow the rule").

---

**3.** In its memorandum opinion, the trial court referred to the Defendant Broadway Electric Service Corporation as "Broadway;" we use the designation "BESCO" for consistency.

The facts in the case of *Shedd v. Gaylord Entertainment Co.*, 118 S.W.3d 695 (Tenn.Ct.App.2003), are similar in many ways to those of the present case. In *Shedd*, the developer of a new record label made an oral offer of a multi-year employment contract to five music industry executives. *Id.* at 696. The executives each accepted the offer, but before work was scheduled to begin, the defendant company sent letters to all five, rescinding the offers. *Id.* The music executives brought suit for breach of contract and promissory estoppel. The Court of Appeals affirmed the trial court's summary judgment in favor of the defendant on the grounds that the statute of frauds barred enforcement of the multi-year oral contract, and that promissory estoppel did not provide a basis for avoiding the statute of frauds under the circumstances presented. The *Shedd* court, after defining the concept of promissory estoppel, further stated in pertinent part as follows:

> While this expansive definition may seem broad enough to apply to the circumstances before us, the Tennessee Supreme Court has taken a more restrictive view, limiting the application of promissory estoppel to "exceptional cases where to enforce the statute of frauds would make it an instrument of hardship and oppression, verging on actual fraud." *Baliles v. Cities Service*, 578 S.W.2d 621 (Tenn.1979). *See also GRW Enterprises, Inc. v. Davis*, 797 S.W.2d 606 (Tenn.Ct.App.1990); *D & S Coal Co., Inc. v. USX Corp.*, 678 F.Supp. 1318 (E.D.Tenn.1988).
>
> There are no allegations in the present case of any conduct by the defendant that verges on actual fraud. It appears rather that the defendant simply decided to abandon its plan to launch a new record label before entering into enforceable contracts with the plaintiffs. While the plaintiffs may have altered their positions in the expectation that the new label would become a reality, there are no indications that the defendant's decision was based on improper motive, or that it obtained an unconscionable advantage by its actions. Thus, we do not believe that this is one of those "exceptional cases" where promissory estoppel should be applied.

*Id.* at 700.

In the present case, because there was no offer of multi-year employment as in *Shedd*, the facts here arguably militate more strongly against the application of the promissory estoppel doctrine. Similarly to *Shedd*, there was no proof presented that BESCO was guilty of any conduct that verged on actual fraud, that it acted from improper motive, or that it gained an unconscionable advantage from its actions. Significantly, the trial court found that BESCO did not make any false representations to the Plaintiffs during the course of the employment discussions, stating, "the court ... does not find that the representations made by [BESCO's] agents and employees were intentionally false. The evidence suggests that at the time they were made those representations were true." In this regard, Mr. Mayton testified that he told Mr. Chavez that the status of work for security-cleared electricians in the beginning of 2003 was good; that BESCO had about 15 contracts, including contracts for all three DOE sites; and that DOE was on a 19–year remodernization program for the Oak Ridge facilities and had a need for electricians for construction work. As the trial court found, nothing in the record suggests that any of these representations were false at the time they were made.

The representations upon which the Plaintiffs relied were vague and general descriptions of the job market in Oak

Ridge for electricians at the time, and we believe they cannot reasonably be parlayed into enforceable "promises" supporting an action for damages for BESCO's failure to employ the Plaintiffs for an extended period of time. During the parties' employment discussions, BESCO agreed to employ the Plaintiffs, which it did, although admittedly for a very short period of time in Mr. Davy's case. But as we have discussed, nothing in the facts and equities presented by this case justifies applying the promissory estoppel doctrine in derogation of both the statute of frauds and Tennessee's at-will employment doctrine. We therefore reverse the judgment of the trial court awarding Mr. Chavez and Mr. Davy damages under the promissory estoppel doctrine.

Our holding that Mr. Chavez and Mr. Davy are not entitled to recovery under the circumstances presented renders moot their argument that the trial court incorrectly determined the amount of damages due them by not taking into account lost per diem payments, overtime, and other employment benefits.

### 3. Tenn.Code Ann. § 50–1–102

■ The Plaintiffs argue that the trial court erred in holding that BESCO did not violate Tenn.Code Ann. § 50–1–102, which provides in pertinent part as follows:

It is unlawful for any person to induce, influence, persuade or engage workers to change from one (1) place to another in this state, or to bring workers of any class or calling into this state to work in any type of labor in this state through or by means of false or deceptive representations, false advertising or false pretenses, concerning the kind and character of the work to be done, or amount and character of the compensation to be paid for such work, or the sanitary or other conditions of the employment, or

as to the existence or nonexistence of a strike, or other trouble pending between employer and employees, at the time of or prior to such engagement.

Tenn.Code Ann. § 50–1–102(a)(1). As we have discussed extensively above, and as the trial court found, the proof presented does not support an allegation that BESCO engaged in false or deceptive representations, false advertising, or false pretenses. Thus, BESCO did not violate the terms of the statute. We affirm the judgment of the trial court on this issue.

### B. Mrs. Chavez's One–Year Oral Employment Contract

■ Mrs. Chavez testified that Mr. Mayton offered her employment as a security-cleared escort for a one-year period and that she subsequently accepted that offer. The trial court held that there was an enforceable oral employment for a one-year period between Mrs. Chavez and BESCO. BESCO asserts on appeal that the trial court erred in this holding; however, BESCO cites no legal authority in its brief to support its position regarding this issue. The trial court specifically found Mrs. Chavez's testimony to be "very credible." Because the alleged oral contract is to be performed within one year, the statute of frauds does not render it unenforceable for lack of a written agreement. The issue of whether BESCO and Mrs. Chavez entered into an oral contract is heavily dependent on determinations of credibility and the weight afforded witness testimony at trial. Regarding damages, the trial court heard extensive testimony from Dr. Robert Bohm, an economist who calculated Mrs. Chavez's monetary losses as mitigated by her quickly finding other employment. The trial court accepted Dr. Bohm's opinion that the damages suffered by Mrs. Chavez as a result of BESCO's breach of contract amounted to $4,463. The evidence does not preponderate

against the trial court's factual findings on this issue, and its legal conclusion that BESCO breached an enforceable contract when it failed to employ Mrs. Chavez.

## V. Conclusion

For the aforementioned reasons, the judgment of the trial court awarding Mr. Chavez $25,661 and awarding Mr. Davy $31,219 pursuant to the promissory estoppel doctrine is reversed. The judgment of the trial court awarding Mrs. Chavez $4,463 for breach of contract is affirmed. Costs on appeal are assessed one-half to the Appellant, Broadway Electric Service Corporation, and one-half to the Appellees, Lester M. Chavez, Judy A. Chavez, and Roger S. Davy.