IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 23, 2017 Session

## ALEXANDER A. STRATIENKO, ET AL v. OSCAR H. BROCK, ET AL.

**Appeal from the Circuit Court for Hamilton County**
**No. 12C1273, 13C867      Jerri Bryant, Chancellor[1]**

_____

**No. E2016-01467-COA-R3-CV**

_____

This is a jury case arising from the formation and management of a limited liability company. The jury determined that the Appellee developer was entitled to payment for his membership interest in the LLC. The jury also determined that the Appellant investor, his wife, and the LLC should indemnify the developer for the judgment relating to the lease of an adjacent lot. Because there is material evidence to support the jury's verdict, we affirm and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded.**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

William H. Horton, Chattanooga, Tennessee, for the appellants, Alexander Stratienko, McNeal Properties, LLC, and Cardiac and Vascular Associates, P.C..

Stephen S. Duggins, Chattanooga, Tennessee, for the appellee, Oscar Brock.

## OPINION

### I.      Background

In approximately 2002, Dr. Alexander Stratienko, a cardiologist, expressed an interest in acquiring his own medical office building near the hospital. Dr. Stratienko and Mr. Oscar Brock, a real estate developer, discussed building an office complex, where

_____

[1] Chancellor Bryant heard this case by interchange.

Dr. Stratienko could have his office and rent out the other space. To this end, Dr. and Mrs. Lisa Stratienko, along with Mr. Brock made an offer to purchase undeveloped property near the hospital. The agreed purchase price was $185,000. The property closed in May 2003, and the deed listed the Stratienkos as owners of a one-half interest and Mr. Brock as the owner of the other one-half interest.

Dr. Stratienko's existing lease expired in 2007, and he wanted the new office completed by that time. The parties began the process of developing the property. By late 2005, the parties had agreed on a 30,000 square foot office building. In August of 2006, Mr. Brock and the Stratienkos formed McNeal Properties, LLC ("McNeal") to own the property; the parties quitclaimed the property to McNeal in September of 2006. The initial operating agreement for McNeal listed Mr. Brock and the Stratienkos as owning 50% each. Mr. Brock was designated the chief manager in the operating agreement, which meant that he wrote checks from the McNeal account and handled the bookkeeping.

Construction on the office space was completed in July of 2007. Dr. Stratienko moved his practice, Cardiac and Vascular Associates ("CVA"), into the second floor of the new office building. CVA entered into a lease agreement with McNeal on July 1, 2007. The Stratienkos insisted that they and CVA have a controlling interest in McNeal. Mr. Brock agreed, and the lease provided, that CVA would obtain a membership interest in McNeal after five years of leasing. On or about January 1, 2008, Mr. Brock emailed the Stratienkos' attorney an amended operating agreement that included CVA as a member, with the following ownership percentages: 37% to the Stratienkos, 37% to Mr. Brock, and 26% to CVA.

As construction on the McNeal building was being completed, Dr. Stratienko expressed frustration about a large billboard on a neighboring lot that blocked the view of their building. The Stratienkos were also interested in the neighboring lot for overflow parking. Dr. Stratienko approached Mr. Brock about acquiring the property, and Mr. Brock contacted Wayne Peters, the representative over the trust that owned the property. Mr. Brock reported that Mr. Peters would not sell the lot, but would agree to a lease. Mr. Peters refused to enter into a lease agreement with McNeal, but agreed to enter into a lease agreement with Mr. Brock, who signed as the lessee. Mr. Brock ultimately entered into a fifteen year lease, which began on May 1, 2007 and gave him the right of first refusal to acquire the property (hereinafter referred to as the "Peters Lease"). Mr. Brock paid the rent on this adjacent property from McNeal funds for almost five years.

The relationship between Mr. Brock and the Stratienkos began to deteriorate in December 2010, when Mr. Brock, who was having financial difficulties, requested a distribution, from McNeal's cash reserve, to its members. The Stratienkos wanted to use the funds to pay down the debt and did not agree to the distribution. Mr. Brock then requested a buyout of $500,000, which the Stratienkos declined on the ground that

McNeal's debt exceeded the value of the building. McNeal's construction loan with Regions Bank terminated in September of 2011. However, the parties entered into a new loan with Regions that included a $700,000 second mortgage as a HELOC, with the Stratienkos' home as collateral. At the time of the refinance, Mr. Brock did not have capital to contribute to the refinancing, nor did he provide any collateral to secure the new loan.

In February of 2012, the Stratienkos called a member meeting and made a motion for the members to contribute capital sufficient to pay back the $700,000 line of credit. Mr. Brock voted against the motion. Because CVA's interest in McNeal had not yet vested, the motion failed for lack of a majority. In March 2012, the Stratienkos requested termination of the lease, or that Mr. Brock stop using McNeal funds to pay the rent. Mr. Brock refused. Ultimately, Mr. Peters filed a lawsuit against Mr. Brock to accelerate future payments. Mr. Brock agreed to a judgment, and at the time of trial, he was making payments to Mr. Peters in the amount of $600 per month. On or about April 12, 2012, following an additional dispute concerning fees charged to the tenants, including CVA, the Stratienkos moved McNeal's funds to a new account, thus, denying Mr. Brock access to McNeal funds.

On April 30, 2012, Mr. Brock filed a derivative lawsuit against the Stratienkos, with McNeal as a nominal defendant. Mr. Brock sought recovery for breach of fiduciary duty, ultra vires, bad faith breach of contract, procuring breach of contract, tortious interference with contract, self-dealing, civil conversion, civil conspiracy, intentional misrepresentation, disgorgement of profits unlawfully obtained, recovery for damage to reputation and goodwill, and judicial dissolution of McNeal. Mr. Brock averred that he was 50% owner of McNeal and that the Stratienkos wrongfully attempted to exclude him from the company. Mr. Brock also alleged that the Stratienkos: (1) caused a McNeal tenant to breach its lease; (2) converted McNeal funds; and (3) made false representations in connection with a refinancing of McNeal property. Finally, Mr. Brock requested dissolution of McNeal due to deadlock and sought temporary injunctive relief concerning continuing management of McNeal. On May 14, 2012, the Stratienkos filed their answer. On May 17, 2012, Mr. Brock filed a third-party complaint on behalf of McNeal against CVA, asserting claims for breach of contract and civil conspiracy.

In July of 2012, after CVA's membership interest in McNeal had vested, the Stratienkos called a member meeting and made a capital call to pay off the HELOC. The percentage of the capital call for each member was based on the ownership percentages: 36% each for the Stratienkos and Mr. Brock and 26% for CVA. Mr. Brock voted against the capital call, but the Stratienkos and CVA voted for it and paid their share. In August of 2012, Mr. Brock was removed as a member under the terms of the operating agreement for failure to pay his share of the capital call.

On June 28, 2013, the Stratienkos and McNeal filed a new action against Mr.

Brock, Regent Properties, and Fleetwood[2], seeking a declaratory judgment that Mr. Brock did not have a valid membership interest in McNeal and was divested of any purported membership interest as a result of failure to satisfy the capital call. The Stratienkos and McNeal also asserted a claim against Mr. Brock for breach of an agreement between the parties for management services, breach of the operating agreement in multiple respects, and violation of the Revised Limited Liability Act. The Stratienkos asserted claims against Regent and Fleetwood for unjust enrichment for payments made by McNeal at the direction of Mr. Brock. Mr. Brock asserted a counterclaim against the Stratienkos and McNeal and a third-party complaint against CVA for declaratory judgment regarding his ownership rights in McNeal, for breach of contract, and for promissory estoppel relating to the lease he entered with Mr. Peters.

The lawsuits were consolidated and tried to a jury over eight days in February, 2016. The trial court entered judgment on the jury verdict on March 3, 2016. The judgment states that: (1) Mr. Brock is not currently a member of McNeal, but is entitled to a judgment against McNeal in the amount of $45,588 for his membership interests; (2) the Stratienkos and McNeal were to indemnify Mr. Brock for the judgment relating to the Peters lease; and (3) the remaining claims were dismissed with prejudice.

On March 30, 2016, Dr. Stratienko, CVA, and McNeal (together, "Appellants") filed a motion for judgment notwithstanding the verdict, or in the alternative, motion to alter or amend and supporting memorandum of law. Specifically, Dr. Stratienko and CVA claimed error in the jury's finding that Mr. Brock was entitled to any payment for his membership interest in McNeal, and that McNeal was liable on the Peters Lease. Appellants argued that there was no material evidence to support the jury's finding that McNeal was obligated to indemnify Mr. Brock on the judgment obtained regarding the Peters Lease. The Appellants also argued that there was no material evidence to support the jury's finding that the Stratienkos individually were obligated to indemnify Mr. Brock on the judgment obtained regarding the Peters Lease. The trial court denied Appellants' post-trial motions by order of June 16, 2016. Appellants appeal.

## II. Issues

1. There was no material evidence to support the jury's finding that Mr. Brock was entitled to payment for his membership interest.

2. There was no material evidence to support the jury's finding that McNeal was obligated to indemnify Mr. Brock on the Peters judgment.

---

[2] Regent Properties undertook development projects around Chattanooga, and Mr. Brock owned 30% of the company until he asked to be bought out in 2009, at which point he moved his broker's license to Fleetwood, a commercial real estate firm. These entities are not parties to this appeal.

3.      There was no material evidence to support the finding that the Stratienkos were individually liable regarding the Peters judgment.

### III. Standard of Review

We review a judgment rendered by a jury by determining whether the record contains "material evidence to support the [jury's] verdict." Tenn. R. App. P. 13(d); *Poole v. Kroger Co.*, 604 S.W.2d 52, 54 (Tenn. 1980). Accordingly, this Court's review is limited to determining whether there is material evidence to support the verdict. Material evidence is defined as "evidence material to the question in controversy, which must necessarily enter into the consideration of the controversy and by itself, or in connection with the other evidence, be determinative of the case." *Knoxville Traction Co. v. Brown*, 89 S.W. 319, 321 (Tenn. 1905). This Court is not to weigh the evidence or to consider the preponderance of the proof of the evidence. "It matters not a whit where the weight or preponderance of the evidence lies under a material evidence review." *Hamilton v. Holderman*, No. M2015-02302-COA-R3-CV, 2016 WL 6311798, at *3 (Tenn. Ct. App. Oct. 27, 2016) (quoting *Hohenberg Bros. Co. v. Mo. Pac. R.R. Co.*, 586 S.W.2d 117, 119-20 (Tenn. Ct. App. 1979)). In determining whether there is material evidence to support the verdict, the appellate court is required to: (1) take the strongest legitimate view of all the evidence in favor of the verdict, (2) assume the truth of all that tends to support it, allowing all reasonable inferences to sustain the verdict, and (3) disregard all countervailing evidence. *Barkes v. River Park Hosp., Inc.*, 328 S.W.3d 829, 833 (Tenn. 2010); *Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, 704 (Tenn. 2000) (citing *Crabtree Masonry Co. v. C & R Constr., Inc.*, 575 S.W.2d 4, 5 (Tenn. 1978)). If there is any material evidence to support the verdict, it must be affirmed; if it were otherwise, the parties would be deprived of their constitutional right to trial by jury. *Wilson v. Americare Sys., Inc.*, 397 S.W.3d 552, 558 (Tenn. 2013) (quoting *Creech v. Addington*, 281 S.W.3d 363, 372 (Tenn. 2009)).

### IV. Analysis

### I.      Mr. Brock's membership interest in McNeal Properties, LLC

Appellants first argue that there was no material evidence to support the jury's finding that Mr. Brock was entitled to payment for his membership interest in McNeal. The Operating Agreement for McNeal Properties, LLC, which was entered into evidence, states, in relevant part, that:

(b) In the event of a contribution default, the Company shall be deemed to have advanced all or any portion of the contribution required of the Defaulting Member as a loan to the Defaulting Member. Such loan shall bear interest on the unpaid balance at the rate of ten percent (10%) per annum and the total principal and interest on such loan shall constitute a

"Default Loan." *Such Default Loan shall not be deemed to have cured the default of the Defaulting Member but for Company accounting purposes shall be deemed to be a Capital Contribution by the Defaulting Member and shall accordingly be credited to his Capital Account as such*.

\*\*\*

(e) If, at any time, the unpaid amount of all Default Loans of a Defaulting member shall total at least Twenty-Five Thousand Dollars ($25,000.00) or if a Defaulting Member has failed to make any required payments for a period of at least three (3) years, then *the Company shall have the option to purchase the Interest of the Defaulting Member at a purchase price equal to the balance of the Capital Account of the Defaulting Member with payment offset by any amount necessary to satisfy the unpaid principal and interest of all Default Loans.*

(Emphases added). The 2011 tax return for McNeal Properties, LLC, which was also introduced into evidence, shows that Mr. Brock had $43,866 in his capital account at the end of tax year 2011. The 2012 tax return for McNeal Properties shows that the capital accounts of the partners increased from $87,730 at the beginning of the tax year to $112,530 at the end of the tax year. Although Appellants' argument highlights Mr. Brock's July 2012 default, in the amount of $259,000, it ignores certain provisions in the operating agreement. The plain language of the operating agreement states that the default loan "shall be deemed to be a capital contribution by the defaulting member and shall accordingly be credited to his capital account as such." The operating agreement and the tax returns for McNeal Properties provide material evidence to support the jury's award. The jury's award of $45,588, which is only a slight increase from the amount in Mr. Brock's 2011 capital account, and well below the increases attributed to the 2012 capital accounts of the other partners, is within the range of reasonableness. Therefore, we affirm the jury's verdict awarding Mr. Brock $45,588 as payment for his ownership interest in McNeal Properties, LLC.

## II. The Peters Lease

With regard to the Peters Lease, Appellants argue that there was no material evidence to support the jury's finding that McNeal was obligated to indemnify Mr. Brock on the Peters' judgment. Additionally, Appellants argue that there was no material evidence to support the jury's finding that Dr. Stratienkos and his wife were individually liable for the Peters' judgment. A series of three emails between Mr. Brock and Mrs. Stratienko dated April 23, 2007 were admitted at trial. The emails show that Dr. Stratienko was open to the idea of leasing the lot across the street, but was more interested in purchasing the property. Mr. Brock responded that the property was not for sale, but that he could obtain a right of first refusal to purchase the property in a lease. A

few minutes later, Mrs. Stratienko replied, "Alex said to go ahead with the across the street property lease." Mr. Brock testified that the lease was a 15-year lease, beginning on the first day of May 2007. Mr. Brock further testified that he had a meeting with the Stratienkos, during which he "reviewed the terms" of the lease with them "before he committed to it on behalf of the company." Furthermore, the fifteen year term of the Peters Lease corresponded with the three five year terms delineated in the commercial lease between McNeal and CVA, in which CVA could accrue and increase an ownership interest in McNeal by continuing its tenancy in the building.

Although the testimony of the Stratienkos contradicted that of Mr. Brock, when the resolution of the issues in a case depends upon the truthfulness of witnesses, the fact-finder, who has the opportunity to observe the witnesses in their manner and demeanor while testifying, is in a far better position than this Court to decide those issues. *Mach. Sales Co., Inc. v. Diamondcut Forestry Prods., LLC,* 102 S.W.3d 638, 643 (Tenn. Ct. App. 2002). "The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court." *Manning v. Manning*, 474 S.W.3d 252, 262 (Tenn. Ct. App. 2015).

Mr. Brock further argues that the Stratienkos were individually liable for the Peters Lease under the theory of promissory estoppel. Tennessee's law on promissory estoppel is stated as follows:

> When one man by his promise induces another to change his situation, repudiation of the promise would amount to a fraud. Where (1) one makes a promise (2) which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, and (3) where such promise does in fact induce such action or forbearance, it is binding (4) if injustice can be avoided only by enforcement of the promise.

*Stones River Utils., Inc. v. Metro. Gov't,* 981 S.W.2d 175, 177 (Tenn. Ct. App. 1998); *Chavez v. Broadway Elec. Serv. Corp.*, 245 S.W.3d 398, 404-05 (Tenn. Ct. App. 2007); *Barnes & Robinson Co. v. OneSource Facility Services, Inc.,* 195 S.W.3d 637, 645 (Tenn. Ct. App. 2006); *Calabro v. Calabro,* 15 S.W.3d 873, 878 (Tenn. Ct. App. 1999). Promissory estoppel is an equitable doctrine, and its limits are defined by equity and reason. *Chavez*, 245 S.W.3d at 404; *Alden v. Presley,* 637 S.W.2d 862, 864 (Tenn. 1982); *Calabro,* 15 S.W.3d at 879. A claim of promissory estoppel is not dependent upon the existence of an express contract between the parties. *Chavez*, 245 S.W.3d at 405; *Wilson v. Price,* 195 S.W.3d 661, 670 (Tenn. Ct. App. 2005); *EnGenius Entertainment, Inc. v. Herenton,* 971 S.W.2d 12, 19 (Tenn. Ct. App. 1997).

Here, the evidence shows that Mrs. Stratienko sent an email to Mr. Brock (after she conferred with Dr. Stratienko), instructing Mr. Brock to enter into a lease on the property across the street for the benefit of McNeal. The emails leave no doubt that the Stratienkos made statements about the lease for the purpose of inducing Mr. Brock to enter into the Peters Lease. These emails and Mr. Brock's testimony provide material evidence on which a reasonable jury could conclude that McNeal was obligated to indemnify Mr. Brock on the Peters' judgment. The same material evidence that supported the jury's finding with regard to the liability of McNeal Properties, LLC to the Peters lease supports the jury's finding that the Stratienkos are also individually liable for the Peters lease under the theory of promissory estoppel.

## V. Conclusion

Because we conclude that the jury's verdict is supported by material evidence, we affirm the trial court's judgment on the jury verdict. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against the Appellants, Alexander Stratienko, McNeal Properties, LLC, Cardiac and Vascular Associates, P.C., and their surety, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE